In the Matter of " GEORGE KINGSLEY ", an Infant under the Age of Sixteen Years.
" MARY KINGSLEY ", Petitioner.*

Domestic Relations Court of the City of New York, Children's Court, New York County, August 16, 1944.

---

* The opinion as here published substitutes fictitious names.

*Harry Fractenberg* for petitioner and infant.

PANKEN, J. This is an application to vacate a commitment of a child to the New York State Training School for Boys and restore the child to probation.

The facts germane and to be considered on this application are as follows: During a period of about eight months, " George " was taken into custody three times, and in each instance was found to have been delinquent. On his first appearance in court he was adjudged delinquent by me because of having broken into a hardware store. After due deliberation and consideration of his background and all of the environmental influences to which he was exposed, it was my opinion that rehabilitation of this child might be effected in the community with the aid and advice of a probation officer. About some four months after he had been placed on probation, he again was before the court. The offense alleged in the petition on the second occasion was more serious. He evidently had associated himself with other boys of like character and engaged in nasty and vicious conduct, endangering his own health and that of others, and particularly that of little girls. He was adjudged delinquent by my colleague, Mr. Justice DELANY and continued on probation. Some four months thereafter, he was before me on a new petition, alleging that he together with others, had assaulted unprovokedly a child. The assaulted boy

testified that this was not the first occasion that he had been subjected to assault by "George".

A very careful investigation was made by the probation officer; he consulted with the principal of the school which "George" attended, conferred with the guidance counsellor of the school and with members of the Juvenile Aid Bureau, examined their records as well as the records of the school. Indeed, he was in constant contact with those who have had some relation to "George" during the period of eight months when the child was on probation.

When the matter came on before me on the third petition, "George" was adjudged delinquent and after due deliberation he was committed by me to the New York State Training School for Boys.

The intake of the New York State Training School for Boys was officially suspended by the State Board of Social Welfare late in the fall of 1943. The suspension of intake to the above-named training school for boys and the crowded conditions existing in the various shelters maintained in the five boroughs of the city by Societies for the Prevention of Cruelty to Children, created a situation which compelled the remand of children committed to the New York State Training School, pending their acceptance by the State school for rehabilitation, as well as others, to the City Prison of New York. In almost all instances, the City Prison of New York cannot be regarded as a proper place even for temporary detention of delinquent children.

Section 82 of the New York City Domestic Relations Court Act provides: "No child coming within the provisions of this act shall be placed in or committed to any prison, jail, lockup or other place where such child can come into contact at any time or in any manner with any adult who has been convicted of a crime, or who is under arrest, unless by order of the court and unless it be necessary to secure his safety or that of others or thereby prevent his escape, in which case he shall be segregated from such adult or adults as far as may be possible * * *."

The City Prison of New York has set aside a wing for the detention of children remanded to the Commissioner of Correction by justices of the Children's Court Division of the Domestic Relations Court. Contact between adults and the children is guarded against. The children, however, are under lock and

key, behind steel bars, locked in cells except for a short period when they are permitted to exercise.

The establishment of Children's Courts in the State of New York was a step forward in the treatment of child offenders.

To convict a person of a crime, the law requires that intent to commit the crime must be established by competent evidence. True, the commission of a crime itself often may reflect the intent to so do. Children often act thoughtlessly, without deliberation, without intent, and as often act imitatively. They do what others do. They follow where they are led. Human beings are creatures of environment and their acts, antisocial in character, may reflect the environment in which they have been reared. That is particularly true insofar as children are concerned. "They live according to their light." The light is provided in the home, sometimes in the school, in the community, in the group with which they associate, in the gang of which they may be members. Sometimes the light is indeed dim.

The law provides, as already adverted to, that under given circumstances a child may be remanded to the City Prison of New York. "George" was, on the occasion of his last appearance before the court, president of a vicious group of marauders who terrorize the neighborhood in which they operate. They allocated to themselves a territory and in that territory commit acts of violence, steal and commit other infractions of the law and are a constant menace to the community. The boy was remanded by me to the City Prison of New York pending his transfer to the New York State Training School for Boys, when intake in that institution would have been lifted or place for him in the institution found. Some several days after the remand, application was made to me to transfer the boy to Youth House, which in the meantime had been established.

Because of the boy's size and also because of his conduct in the City Prison, I deemed it safe both for others and himself to be transferred to Youth House, awaiting transfer to the New York State Training School for Boys. He did well at Youth House; so it is reported by the workers of Youth House. The report in part reads: "This boy has made an excellent and outstanding adjustment during the period of his stay here at Youth House. This has been so apparent, that several supervisors have brought to my attention their very positive feeling about this boy. In fact, it has been rather challenging to understand how this boy managed to maintain his good relationship with many of the boys who were known to be aggressive and

problems, yet nev participated in any of their destructive behavior, or particularly in their plans to escape.''

Youth House further reports: '' The boy's own story is that at one time he joined a ' gang ' in order to participate in athletics, but that he withdrew when he learned the nature of their activities. This boy has told us very seriously about the nature of the gangs in Harlem, and was well aware as are all the boys who the leaders were within the Youth House group. Again his discussion is not in any way casting blame on those boys.''

'' George '' was not truthful for he was president of the gang. He is a bright boy and evidently he knew how to behave when under observation and supervision. Possibilities for his rehabilitation are good. But a different environment, associations, and sphere of activities must be provided to effectuate a change: a retraining, and moreover a change in attitude of mind as to his status in the community and his rights as an individual, and his duties and obligations to others in return for the privileges and rights which organized life accords to each individual.

This application is made pursuant to provisions of sections 83 and 86 of the New York City Domestic Relations Court Act.

No doubt, the justices of this court have the power to render such judgment and make such orders or commitments as the court may be authorized by law to make.

While it may be true that '' George '' had acquired characteristics which led him to delinquent conduct, it was in part due to neglect of him because of lack of guidance, training, guardianship and influences exerted upon him by virtue of community conditions. The boy was before the court charged with delinquent conduct, and was found to be a delinquent. Most children engaging in delinquent conduct do so because of failure on the part of those chargeable with their upbringing to inculcate moral precepts and sense of social responsibility. Quite a few children are asocial rather than antisocial.

Subdivision (g) of section 83 affects neglected children. It empowers the court also to commit delinquent children to institutions for their rehabilitation if rehabilitative measures of probation did not have the desired effect.

Parenthetically, it might be pointed out that placing children on probation, at least to the child's mind, carries with it the idea that he is punished. Punishment is not rehabilitative. Insofar as the Children's Courts of this State as well as of other States are concerned, the thought of punishment of children is

foreign to their purpose. Reclamation, salvaging, rehabilitating, retraining, the ultimate participation by the child as a child, and afterwards as an adult in the life of the community as a citizen, contributing to its welfare are the aims and objectives of Children's Courts.

Section 83 significantly sets forth the very purposes for which the Children's Court Division of the Domestic Relations Court was established. In part it reads as follows: '' The court from time to time may adjourn the hearing and inquire into the habits, surroundings, conditions and tendencies of the child so as to enable the court to render such order or judgment as shall best conserve the welfare of the child and carry out the objects of this act.''

The Children's Court has exclusive original jurisdiction of all cases or proceedings affecting children under the age of sixteen when the act or offense by such child amounts to juvenile delinquency. Any act on the part of a child other than one which, if committed by an adult, would be punishable by life imprisonment or the extreme penalty — execution, is within the jurisdiction of the Children's Court.

It is evident that child offenders are not to be regarded or treated as criminals. Indeed, subdivision 15 of section 2 of the New York City Domestic Relations Court Act defining what is meant by a delinquent child says, '' Delinquent child means a child over seven and under sixteen years of age (a) who violates any law of the United States or of this state or any ordinance of the city of New York, or who commits any act which if committed by an adult would be an offense punishable otherwise than by death or life imprisonment '', and proceeds to enumerate other acts which by law are denominated as acts of delinquency.

It appears to me that the object of this court is to protect the community and individuals from injury or harm at the hands of delinquent children. Reclamation of a delinquent child is protection of the community and the individuals constituting it. Whether the establishment of the Children's Court was intended objectively to protect the community against misconduct by children in the first instance, or to salvage youth in the second instance, is immaterial. The community cannot be protected unless delinquent youth is properly subjected to therapy which would rehabilitate, retrain and change the attitude of mind of the child — give him a sense of social responsibility, a recognition of the fact that in organized society each individual owes a duty to all as all owe a duty to the individual — and in order that each child benefit by the therapy available he should be treated as an individual.

It must be recognized that there are no two children alike. Even twins brought up together differ in emotional reaction and in outlook upon life. Guidance and education of children, to be effective, must be on an individual basis. All children do not respond alike. The best results obtainable from guidance and education are when these are fitted to the child rather than fitting the child to the guidance and education sought to be imposed.

A child profits most when he feels that he makes his own decisions. Children are not to make decisions of importance. The approach most effective is to stimulate in the child a desire to make a proper decision and when he makes such a decision to consider it his own. Every child is a personality, and must be so regarded, which of course, he is. Personalities are individualities. That is true of normal children and to a greater extent, it is true as regards disturbed children. Delinquent children are by and large disturbed youngsters. No child is born to be delinquent. Many and various factors contribute to life styles and aggressions which are at war with what is accepted as normal. And each child reacts, largely, differently than other children might to environmental influences.

The provisions of section 83 of the act are not applicable on the motion considered herein, except as has been set forth.

This motion must be considered on the powers conferred upon the court in section 86.* It is argued by counsel for the child that because sixty days have passed since commitment to the New York State Training School for Boys has been made by the court, the application herein is made in due time and counsel refers the court to several cases in which it was held that courts have the power to give credit to a defendant for the time served in jail prior to actual commitment to the prison or penitentiary designated. He refers the court to the case of *People ex rel. Le Carta* v. *Warden* (118 Misc. 109) as well as *People ex rel. Fishweicher* v. *Snyder* (183 Misc. 549) in both which cases the courts included or allowed credit to the defendants for the time served in county jails.

The Appellate Division of the Supreme Court of the State of New York, Third Department, in the case of *People ex rel. Nastassi* v. *Martin* (267 App. Div. 629), the Presiding Justice speaking for the court said that the defendant therein, " should receive credit for the time which has elapsed after his return to

New York authorities," directing, in effect, that the defendant in that case was entitled to credit for the time that had elapsed during his sentence.

These cases and the theory on which they were decided do not apply to children found delinquent and committed to training schools or other institutions for their retraining and rehabilitation. Repeating again, children are not criminals. They are regarded by the law as delinquents who are to be retrained and thus salvaged for return to the community.

" George " continued after he was transferred on remand to Youth House together with his sojourn in the City Prison of New York for a period of over sixty days on remand, when he was finally accepted by the New York State Training School for Boys.

Children are not punished and hence the period of remand or the period that a child might continue at an institution for rehabilitation cannot be, and is not, regarded as serving a sentence imposed by the court.

The court has the power, in view of the purposes for which it was established, to vacate a commitment before actual transfer of the child to the institution to which he was committed, and it will do so in instances where during the period of remand, it appears that the child needs no further treatment. That, the court may do of its own motion upon facts submitted to it, or upon application on behalf of the child.

" George " was committed to the New York State Training School for Boys not as punishment but rather to be helped to ultimately help himself.

The purpose of my commitment of " George " to the New York State Training School for Boys was to accord him the opportunities available in that institution to its charges. " George " is not suffering from a psychic disturbance — that is my impression. It is, however, apparent that he is laboring under a psychologic state of mind which requires complete change.

Professor Harvey J. Robinson said in substance that individuals act in accord with their attitudes of mind. A change in this boy's attitude of mind is imperative in order to enable him to take his place and function normally in the community. Children are remanded or committed to various schools and institutions with the object of changing their attitudes of mind so that when they are returned to the community they will be an asset rather than a liability. Change can only be wrought in the psychologic state of mind of a human being by a study

of background and inquiry into his reactions. It cannot be done according to a general rule. Each child presents a specific problem and must be treated individually.

The law in this State as well as in all States throughout the Union limits the period of supervision or retraining of children. This is sound law. Evidently the intent of the Legislatures of the various States of the Union as well as of the Congress of the United States was to accord children, who by reason of neglect or other factors, had engaged in delinquent conduct and who had responded to antisocial or asocial attitudes in their relations with others in the community, the training, education and guidance which would tend to rehabilitate them and give them sound attitudes.

" George " by his associations and the influence exerted upon him acquired characteristics which excluded the possibility of living normally in the community. He needs retraining. He admitted that he was the president of a very dangerous and vicious gang. As already stated, he is a delinquent child but the delinquency in large measure is due to neglect. Children who are rejected seek compensation for the rejection in aggression and often they become exhibitionistic to attract attention, attention that they yearn for and which is denied them. " George " felt himself rejected although he might not have been so. His mother, a good woman, worked every day, and the boy, as well as she, was deprived because of economic factors of the natural right of guidance and to be guided, of guardianship and to be guarded, a right which all children need badly in the formative period of life.

Because of circumstances and conditions referred to, " George " did not immediately go to the institution upon his commitment to the New York State Training School. It is to his credit that despite the fact that he had been committed to the New York State Training School, and most children under such circumstances believe that they no longer have anything to lose, he accepted all of the benefits and guidance of the workers at Youth House. Youth House, however, is not a training institution. It is not equipped, nor is it required, to prepare or carry out long-range programs of rehabilitation. Children are remanded to Youth House during pendency of the proceeding in which they are involved and until a final determination of the court as to what might be best for the child.

The prognosis for this boy is good. Rehabilitation and salvage are in the offing. It may not be necessary for " George " to remain at the New York State Training School for a long

time. However, he requires treatment, the therapy available at the State school.

The application is denied without prejudice to renewing same upon the boy's change of attitude of mind and a recognition of his obligations in return for the privileges which he enjoys and are his in the community. The school may discharge " George " at any time it deems it safe and wise. If it fails to do so, the parent may ask for his discharge, and if the New York State Training School refuses to do so, application can be made to the court for his discharge.

In my judgment, return of the boy to the community should be coupled with probation. Moreover, in order to safeguard him against a relapse, his parents should be required to move from the area in which he has acquired the characteristics which brought him to court and in which the gang of which he was the president is operating.