*945 OPINION OF THE COURT
Minna R Buck, J.
Respondent was placed in the custody of the Commissioner of Social Services on October 28, 1981, pursuant to section 756 of the Family Court Act. On August 26, 1982, the petitioner timely filed a petition for a 12-month extension of such placement, and a hearing was held January 12-14, 1983.
Petitioner argued, in support of its motion to extend placement, that respondent’s need for treatment, which led to the initial placement at Baker Hall, still exists and that there was no showing that alternative at-home treatment would be effective, or more effective, than that provided by Baker Hall.
Respondent moved to dismiss or, in the alternative, to place Lawrence in custody of his parents, subject to certain conditions. As a further alternative, respondent moved for an order placing respondent, pursuant to section 760 of the Family Court Act, with the Department of Mental Hygiene. Finally, respondent argued that extending placement at Baker Hall for another 12 months would result in such a “gross disparity” between the length of respondent’s involuntary confinement for the act (a class B misdemeanor) which gave rise to the original petition in this case, and the maximum 90-day imprisonment which could have been imposed on an adult who committed the same act, as to amount to a denial of due process and equal protection under both the State and Federal Constitutions.
Respondent Lawrence D. is nearing his 16th birthday (on April 23, 1983). The record before the court shows a continuing pattern of disruptive and violent behavior on respondent’s part extending back at least as early as 1976, according to reports from teachers, social workers, and law enforcement officers; during this period, the boy was expelled or suspended from six schools in four different communities, including several in which he had been assigned to special classes where he might receive additional services or attention not available in the “mainstream” classroom. Between February 1,1979 and October 8,1981, *946 Lawrence was the subject of 26 different petitions alleging juvenile delinquency.*
Since 1976, Lawrence has been diagnosed and evaluated at least once a year by a succession of psychiatrists, psychologists, neurologists, and social workers, and by two separate public school districts’ committees on the handicapped. Although the individual evaluations varied in their emphases, findings, and recommendations, they were unanimous in concluding that Lawrence needed professional help. Almost all recommended that such help bes provided on a long-range basis, in a structured, preferably residential, setting.
Lawrence’s parents apparently concurred, having appealed to the authorities on numerous occasions for help in obtaining residential treatment for Lawrence. No evidence was offered to suggest any change in the essential facts of Lawrence’s condition which previously led his parents, this court, and a variety of professionals to conclude that Lawrence, an adjudicated juvenile delinquent, is in need of treatment and supervision. On the contrary, the entire record herein presents clear and convincing proof that the need for such treatment and supervision still exists.
Respondent’s motion to dismiss the petition for extension of placement is therefore denied.
Respondent’s motion to substitute — in lieu of the extension of the present placement — placement at home with his parents, accompanied by individual therapy for Lawrence and his parents, is also denied. This court is aware that such orders were made in disposing of several earlier article 7 proceedings involving respondent by the Honorable Edward J. McLaughlin. Süch orders merit — and have been accorded — the fullest respect and consideration; nevertheless, for the reasons stated below, the court is of *947 the opinion that such a disposition is not warranted at this time.
In August, 1979, based on a stipulation by the parties, Judge McLaughlin placed Lawrence in the custody of the Commissioner of Social Services for 18 months, for replacement in a semisecure residential facility. On January 8, 1980, this order was modified and Lawrence was placed in the custody of his parents on condition that specified psychological services — to wit, individual therapy for Lawrence one hour per week — plus IV2 hours per week of family therapy — were to be provided. The primary reason for the modification appears to have been the extended delay in implementing the original placement and the lack of any other treatment in the interim.
The circumstances before the court in the instant case differ materially from those just described. The issue here is not whether it would be more appropriate to place Lawrence at home in his parents’ custody, receiving some therapy on a weekly basis instead of simply leaving him at home without any help for the parents because no residential placement had been arranged. The question before the court now is whether the at-home disposition described would be more appropriate than extending Lawrence’s placement at Baker Hall.
The Critical Care Unit at Baker Hall, where Lawrence was placed, has been certified by New York State Department of Social Services to receive and treat youngsters in the custody of a local commissioner who are most in need of intensive treatment and supervision. Lawrence was assigned to “Michael Cottage,” a semisecure residence (i.e., doors to the outside are locked) consisting of two 5-bedroom sections, each with its own self-contained classroom and living room areas; these two sections, together with shared dining room and recreational facilities, make up a unit for 10 boys. The unit is part of a larger campus, which also includes nonsecure residential cottages and other common facilities.
A staff of 12 is assigned to Michael Cottage, including individuals with education and training in social work, psychology or related disciplines; they are under the supervision of a cottage director with a Master’s degree in *948 counselling and 10 years’ experience at Baker Hall. Members of the teaching staff at Michael Cottage are certified in special education and are under the direction of the Baker Hall education director. The ratio of staff to youngsters at Michael Cottage is 2 to 1, with round-the-clock supervision on the premises. A consulting psychiatrist is available.
There was credible testimony of some improvement in Lawrence’s aggressive behavior during the three months preceding the hearing on this petition as well as significant academic improvement, despite several incidents of violent and aggressive actions.
Both the psychiatrist and the primary therapist also testified that Lawrence might benefit further from treatment at Baker Hall.
There is only fragmentary and inferential evidence as to the efficacy of the alternative disposition suggested. While Lawrence was at home, the psychological therapy specified in the modified order was not fully carried out, and it was discontinued after several months. According to the record, the therapist indicated that Lawrence’s prognosis was guarded but favorable at the end of March, 1980, when therapy was discontinued; when specifically asked if Lawrence could successfully be maintained in the community with the aid of therapy, the therapist’s response was, “I do not know.”
Even after therapy commenced again, in March, 1981, Lawrence continued to get into trouble; there is no evidence he ever attended school subsequent to his expulsion in June, 1980. While the court is aware of serious medical and financial problems faced by Lawrence’s family during this period which may explain their inability to control Lawrence’s behavior or participate in therapy, there has been no showing that this situation has changed for the better.
An extension of placement hearing is synonymous with a dispositional hearing (Matter of Pannone, 67 Misc 2d 516). On a preponderance of the material and relevant evidence on this record, the court finds that the purposes of the Family Court Act will be better served by an extension of Lawrence’s placement at Baker Hall. Respondent’s Law *949 Guardian also contends, in the alternative, that there is evidence that respondent is “mentally ill” as defined in section 1.03 of the Mental Hygiene Law, and he argues that if the court finds this to be true, the court must issue a dispositional order pursuant to section 760 of the Family Court Act. None of the previous psychiatric, psychological, or neurological evaluations of respondent which are part of the record in this case ever mentioned evidence of mental illness in respondent. On the contrary, several explicitly eliminated this possibility.
In the instant case, the consulting psychiatrist for Baker Hall stated that he would not be willing to sign a physician’s certification that respondent was mentally ill, nor did he make a diagnosis of mental illness either when he examined Lawrence during the initial diagnosis at Baker Hall or during subsequent reviews of his condition in June and August, 1982.
Section 760 of the Family Court Act provides that the court, during a dispositional hearing pursuant to section 745 of the Family Court Act, may find that a juvenile delinquent has a mental illness as defined in section 1.03 of the Mental Hygiene Law. On this record, the court finds that respondent is not mentally ill as defined in section 1.03 of the Mental Hygiene Law.
Respondent also claims that extending his placement at Baker Hall for another 12 months — taken together with other periods of detention before and after his stay at Baker Hall — would deprive him of due process and equal protection of the law, because an adult who committed the same offense on which the instant adjudication of delinquency was based (attempted unauthorized use of a motor vehicle, a class B misdemeanor) could be sentenced to no more than 90 days’ imprisonment. The court takes note that respondent was detained at Hillbrook for two periods of 56 and 35 days, respectively, following his arrest for the above act and immediately prior to his removal to Baker Hall, and for an additional period of more than 60 days (up to the present date) pending the outcome of this hearing on petitioner’s application for the extension. The court deplores this excessive period of detention, at least some of which could have been avoided had the various agencies *950 and institutions involved — including this court — carried out their respective obligations more expeditiously.
Nevertheless, the duration of such detention has no legal bearing on either the propriety or the constitutionality of respondent’s placement and its proposed extension, pursuant to subdivision (b) of section 756 of the Family Court Act, since the authorized length of placement under that section is not conditioned in any way on any period of detention (contrast, e.g., Penal Law, § 70.30, subd 3).
The issue presented is whether there is such a “gross disparity” between the disposition for an adjudicated juvenile delinquent and the sentence for a convicted misdemeanant in these circumstances as to violate respondent’s constitutional rights; the same reasoning applies when the placement may extend to 24 months or longer, whether or not accompanied by 151 days’ detention.
It is certainly true, as respondent argues, that the historical “trade off” of the constitutional protections of a criminal proceeding for the rehabilitation and treatment afforded in a juvenile proceeding has significantly narrowed in recent years (e.g., Matter of Gault, 387 US 1; Matter of Winship, 397 US 358; Matter of Carmelo E., 57 NY2d 431, 435; Matter of Felder, 93 Misc 2d 369). “It has been clear for some time that the juvenile justice process is quasi-criminal in character. (In re W., 19 N.Y.2d 55 [1966].)” (Gottfried & Barsky, Supplementary Practice Commentary, McKinney’s Cons Law of NY, Book 29A, 1976-1982 Supp Pamph, Family Ct Act, § 711, p 334.)
Nevertheless, it should be noted that the overlay of traditional protections on juvenile proceedings in each of the cases cited dealt primarily with safeguards contained in the procedures leading to fact-finding determinations; the area of constitutionally permissible outcomes for juveniles and adults committing the same acts have not disappeared (Matter of Carmelo E., supra).
Emphasis has been recently placed on the right to treatment as the underlying rationale for differential outcomes in the cases of juveniles, as contrasted to adults. (Martarella v Kelley, 349 F Supp 575; Inmates of Boys’ Training School v Affleck, 346 F Supp 1354; Matter of Neil M. v Gregory M., 71 Misc 2d 396.)
*951 The rationale underlying the holding of the United States Court of Appeals for the Seventh Circuit that juveniles have a right “to individualized care and treatment” (Nelson v Heyne, 491 F2d 352,360; emphasis in original), is reflected in the range of options available as a disposition on an adjudication of juvenile delinquency (Family Ct Act, §§ 753, 755-760), as well as for reconsideration of such orders in section 761 through 768 of the Family Court Act. Under these provisions, a Family Court Judge may suspend judgment, put the respondent on probation, or place respondent in the custody of his or her parents, a suitable relative or other individual or with a local Commissioner of Social Services, the New York State Division for Youth, the Commissioner of Mental Health or the Commissioner of Mental Retardation & Developmental Disabilities. The latter may be authorized or directed to place the respondent in one of a variety of types of facilities. If, as in the instant case, the placement is with the Commissioner of Social Services and respondent was found to have committed an act constituting a misdemeanor, the placement shall be for a maximum of one year (Family Ct Act, § 756, subd [b]). (Maximum-period placement for other offenses may vary and in some cases a minimum period of placement may be imposed, e.g., Family Ct Act, § 753-a.)
A placement pursuant to subdivision (b) of section 756 of the Family Court Act may be extended; the court on its motion or that of any interested person on behalf of respondent may act to terminate placement or otherwise reconsider, stay, vacate, or modify, for good cause shown any dispositional order (Family Ct Act, §§ 761-762).
Other sections of the Family Court Act authorize the court to cause other auxiliary services to be made available at any stage of a proceeding (Family Ct Act, §§ 251-255).
As this cursory review of the powers of the court with respect to fashioning an individualized disposition suggests, the Legislature has chosen to retain a statutory scheme which permits wide latitude in outcomes, some of which on their face permit placement of a juvenile for longer periods than the potential sentence available for an adult who commits the same offense.
*952 Commenting on the intent of the Juvenile Justice Reform Act (L 1976, ch 878), one of the sponsors noted: “Rejecting proposals to transfer various categories of juvenile offenders to the adult criminal justice system, the Legislature chose instead to reform and strengthen the juvenile justice system.” (Barsky & Gottfried, Supplementary Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, 1976-1982 Supp Pamph, Family Ct Act, art 7, p 331.)
Under the doctrine of equal protection, a State may make distinctions among individuals or groups only upon the basis of reasonable classifications. (Matter of Patricia A., 31 NY2d 83, 88; Lindsley v Natural Carbonic Gas Co., 220 US 61, 78.) The question then becomes whether disparity in duration of sanctions based solely on the age of the offender, as in the instant case, is in fact reasonable.
The differential treatment of juveniles and adults has long been upheld on the principle of parens patriae. The State’s interest in youngsters who deviate from accepted standards of lawful behavior, rather than in merely punishing them, has been held to justify a longer period of placement or commitment for a juvenile than for an adult in the majority of jurisdictions (Abernathy v United States, 418 F2d 288; Matter of Maricopa County Juvenile, 124 Ariz 377, and cases cited therein; State ex rel. K.V.N., 116 NJ Super 580, affd 60 NJ 517).
In Matter of Wilson (438 Pa 425, 431-432), the court enumerated the conditions precedent to finding such distinction constitutionally permissible: (1) the juvenile has notice at the outset of all factors upon which the court might base an adjudication of delinquency; (2) the conclusions on which a delinquency adjudication is based, plus all facts supporting the conclusions, are set forth in the court’s order; and (3) it appears that the longer commitment will insure rehabilitative treatment and not just deprivation of liberty.
These conditions are all present in this case. When respondent admitted the allegations in the original petition, as amended, respondent was aware of the factors which would have had a bearing on the adjudication, including pending hearings on other petitions before the *953 court alleging respondent had committed acts which would have been crimes if done by an adult. The findings of fact and conclusions of law are set forth in the original order of fact finding and disposition. An extension of placement at Baker Hall will at least assure that respondent receives rehabilitative treatment on a consistent basis for this period.
Questions have been raised as to the appropriateness and the effectiveness of such treatment. There has been no showing, however, that such treatment cannot benefit Lawrence or change his long-standing pattern of antisocial behavior. On the other hand, there was credible testimony as to the positive effects upon at least a few other boys in the Critical Care Unit as well as to some improvement in Lawrence’s behavior. There has been no showing that any other program of treatment will guarantee or even present a likelihood of better progress than Lawrence made during his stay at Baker Hall. (Two other possible alternatives were considered by the parties prior to the Baker Hall placement, but in each case, the private agency involved refused to accept Lawrence.) Since there is presently a bed available for Lawrence at Baker Hall, extension of the placement has the patent advantage of allowing Lawrence to be moved immediately out of a detention facility where he has already been kept too long with little or no treatment.
Based on the evidence before it, the court now makes the following findings:
1. Lawrence is in need of treatment, without which he is likely to continue his previous pattern of antisocial, aggressive and occasionally violent behavior.
2. Lawrence is not mentally ill, as defined in section 1.03 of the Mental Hygiene Law.
3. During his placement in the custody of the Commissioner of Social Services, and placement at Baker Hall, Lawrence has received treatment deemed appropriate to his condition and recommended by a number of credible professionals. This treatment will be continued if the placement is extended.
4. The alternative disposition previously ordered in another proceeding (placing Lawrence at home in the *954 custody of his parents, with individual therapy once each week and family therapy once each week) was never fully implemented. There is no showing that it would be fully implemented as intended were a similar order entered in this case. There is no showing that such an order, even if fully implemented, would be as effective or more effective than the treatment Lawrence received during his stay at Baker Hall.
5. The only feasible alternative treatment or placement for Lawrence which has been suggested or is likely to present itself is the Division for Youth Facility at Industry. There is no showing that such placement would afford Lawrence more effective treatment than that available at Baker Hall.
Accordingly, the court concludes that the needs and best interests of Lawrence as well as the need for protection of the community will be best served by extending the present order of placement pursuant to subdivision (b) of section 756 of the Family Court Act; proceeding under section 760 of said act is not appropriate in this case; and such extension does not violate respondent’s constitutional rights.
Respondent’s motions to dismiss the petition and for an order pursuant to section 760 of the Family Court Act are denied. The petition to extend the placement previously ordered under docket number D-353-81 and entered October 28, 1981 to October 28, 1983, is granted.
The court also wishes to take note of the deep concern evidenced by Lawrence’s parents for his welfare, and their expressed desire to have him home, despite other severely trying personal problems which have struck their family during the past several years. Lawrence’s prospects for an early return to his family may depend not only on his own progress but also upon his parents’ ability to obtain, and willingness to accept, counselling as previously recommended. Since Lawrence’s parents are not “before the Court” in the sense contemplated in subdivision (f) of section 759 of the Family Court Act, the court can only urge them to seek and avail themselves of such services. The court also earnestly urges the Commissioner of Social Services to lend all appropriate resources at his command *955 to provide the maximum direct or indirect assistance to the parents in obtaining such services during this extended period of his custody over their son. The Commissioner is directed, pursuant to section 255 of the Family Court Act, to maintain contact with Baker Hall, with Lawrence, and, if possible, with his parents on a regular basis, not less frequently than once each month for the duration of this extended placement with respect to Lawrence’s status, and to submit a report to the court no later than the end of the year of placement, making recommendations and giving such supporting data as is appropriate.

 Said petitions were identified and enumerated as part of the record of this hearing. The court has taken note that five separate incidents were the basis for 12 of those petitions, and, of the entire number, only three, including the original petition in the instant case, resulted in an adjudication of delinquency based on respondent’s admission in each such case. One petition was dismissed on the merits; the remainder were withdrawn or given an adjournment in contemplation of dismissal, upon the parties’ stipulation, in connection with the dispositions in the three adjudicated cases. It is fair to say, however, that the acts alleged in these latter petitions — had they been found to have occurred — would not have been inconsistent with respondent’s demonstrated pattern of behavior.