*28 OPINION OF THE COURT
Ettore A. Simeone, J.
Upon due and careful deliberation of the respondent’s moving papers and the opposing papers filed by the presentment agency, and after hearing counsel on the record on February 9, 2000, the court concludes that there is no legal or factual justification for dismissal of the above-captioned juvenile delinquency petition dated February 7, 2000. Accordingly, the respondent’s motion under Family Court Act §§ 315.1 and 315.2 is denied in its entirety.
The respondent, Asia H., presently age 15, is alleged to be a juvenile delinquent by reason of the commission of an act which, if committed by an adult, would constitute the crime of criminal contempt in the second degree, in violation of Penal Law § 215.50 (3). The petition alleges, among other things, that Asia H. violated the mandate of this court dated January 31, 2000 (a temporary order of protection entered in a pending person in need of supervision [PINS] proceeding under docket No. S-538-99) by engaging in threats and/or acts of violence directed at a resident of Montfort House, a nonsecure detention facility. The petition charges that the respondent committed criminal contempt, a misdemeanor, by reason of her intentional disobedience of such order and that the respondent is thus a juvenile delinquent. The respondent now moves to dismiss the petition on two separate but related grounds. Initially, the respondent asserts that this petition constitutes an illegal “bootstrapping” of a Family Court Act article 7 PINS proceeding into a Family Court Act article 3 juvenile delinquency proceeding. The respondent further asserts that the legislative intent and the statutory, scheme of article 7 of the Family Court Act is such that a claimed violation of an order of protection in a PINS proceeding may only be dealt with in a certain way, which does not include the filing of a juvenile delinquency petition charging criminal contempt.
The court disagrees with the respondent and rejects her arguments as being without merit and lacking foundation in law or fact. At the outset, the court refers to and otherwise adopts the concerns, opinions and reasoning of the Honorable Guy DePhillips in Matter of Jennifer G. (182 Misc 2d 278 [Fam Ct, Queens County 1999]). In the court’s mind, the decision in Jennifer G. sets forth a powerful — and logical — argument for the proposition that the Family Court Act does not prohibit the filing of a juvenile delinquency petition charging criminal *29 contempt in the second degree arising out of a PINS’ intentional disobedience of a lawful mandate of the court. Further, the court refers to the decision of the Honorable Richard Hunt in Matter of Kimberly A. P. (178 Misc 2d 180 [Fam Ct, Jefferson County 1998]), wherein a juvenile delinquency petition alleging criminal contempt in the second degree against an adjudicated PINS eloper was sustained. Accordingly, there is ample precedent for the proposition that a youth who is before the court on a PINS petition is not immune and otherwise free to disregard the clear orders and mandates of a Family Court Judge.
The court further finds that the respondent has offered no compelling argument or reason for the dismissal of this juvenile delinquency petition. Indeed, the respondent asserts, in conclusory fashion, that the filing of this juvenile delinquency petition constitutes illegal “bootstrapping,” yet, there is no definition offered for this term, nor any precedent, statute or case presented which tells the court what bootstrapping is and/or why it is illegal in this particular scenario. The respondent also contends that this petition violates Family Court Act § 759; however, that section ostensibly precludes the court from placing a respondent as a condition of an order of protection in a PINS case. Here, there is no attempt to place the child — the issue is the facial propriety of a new juvenile delinquency petition. Finally, respondent’s claim that Family Court Act § 780 (and, by analogy, §§ 778 and 779) provides the sole and exclusive mechanism for a proceeding on the violation of an order of protection is summarily rejected by the court. None of the cited statutes may fairly be read in such a restrictive manner, and it is noteworthy that section 780 uses the word “may,” not “shall,” thereby suggesting that a modification or revocation of the order (of protection) is only one . possible method of proceeding, not the exclusive one.
Respondent’s entire statutory argument is further misplaced as the juvenile delinquency petition herein alleges the disobedience by the respondent of a mandate of the court issued on January 31, 2000, not specifically the alleged violation of an order of protection. The fact that the court’s directive to Asia H. to refrain from threats and violence was ultimately put in the form of an order of protection does not affect the force and character of the directive as a court mandate. It was an order, meant to be complied with by the respondent, issued as a valid judicial command that was to be adhered to under penalty of contempt.
*30 The respondent’s generalized averment that this entire process is violative of the Family Court Act and is contrary to public policy is simply not accepted by this court. To the contrary, the court firmly believes that the approval of the instant juvenile delinquency petition is entirely consistent with the Family Court Act, particularly Family Court Act § 141, which declares that a Judge of the Family Court has a wide range of power and discretion, as well as “grave responsibilities,” when he or she finds cause to intervene in the life of a child. This is precisely what has occurred with respect to Asia H.
This child first presented herself to the court as a troubled 14 year old with severe behavioral difficulties. She was alleged to be physically violent and verbally abusive to members of her household and at school, to have left home without the knowledge or permission of her parent, to be uncontrollable and known to engage in larceny. On November 4, 1999, after the PINS petition against her was filed, Asia was allowed to return home only on specific conditions, to which she agreed, and which were written out and entered as an order. Respondent violated her conditions of release and was remanded nonsecure from November 18, 1999 to November 22, 1999 after the petition was established. On November 22, 1999 she was permitted to return home and her conditional release continued. Unfortunately, Asia’s negative behavior continued and she came before the court on January 11, 2000, at which time there was no alternative but to remand her to the Montfort House nonsecure home. Asia was advised by the court at that time of the consequences for failure to follow the rules of Montfort House and eloping. When respondent returned to court on January 21, 2000 it was reported that she had behaved very poorly while in nonsecure detention, The court again remanded respondent to Montfort House and the Probation Department was directed to make placement referrals. Asia was admonished regarding her conduct towards staff and residents at Montfort House. When she returned to court on January 31, 2000, the report of her behavior was again very poor. It was reported that she once again had engaged in verbal abuse of staff and residents and had acted out aggressively. On that date (Jan. 31, 2000) the court issued an order of protection which directed: “Respondent shall refrain from acts and threats of physical violence directed towards any staff member or resident. Respondent is not to engage in any criminal mischief and refrain from the use of foul or abusive language toward any staff member.” The record of January 31, 2000 reflects that *31 Asia was told by the court, in clear and certain terms, that she must control herself and refrain from aggressive acts while in Montfort House. She was fully allocuted, in the presence of her Law Guardian, that if she became physically violent or threatened anyone, or otherwise violated the express directions of the order of protection, she would be in contempt of the court’s order and otherwise subject to a juvenile delinquency petition charging criminal contempt which would permit the court to remand her to secure detention. The court made its intentions and concerns known to Asia in a face-to-face manner. This was the command and order of the court, almost to the point of being a plea for compliance to which the respondent fully agreed. The court was constrained to remand her nonsecure again because she was only a PINS at that point, even though to do so would clearly be placing the staff and residents of Montfort House in jeopardy. It was reported that shortly thereafter she acted out in Montfort House and kicked a staff member, verbally harassed a resident on a continual basis, and kicked another resident in the shoulder while being restrained by a staff member, refusing to obey commands by staff that she stop engaging in a physical altercation. The presentment agency thus filed a petition alleging that respondent had committed an act which if committed by an adult would constitute the crime of criminal contempt in the second degree arising out of her action in kicking a resident of Montfort House in violation of the court’s order.
To argue (as respondent does) that this youth is entirely immune from criminal charges based upon her voluntary disobedience of the absolutely clear mandate of this court is sheer folly. It has no logic, no sense. It would mean that a youth who has come to the court because of incorrigible, habitually disobedient and self-destructive behavior is immune from appropriate consequences of further and more extreme disobedient conduct because of the very statute which was enacted to deal with such behavior. In effect, the court would actually be encouraging incorrigible, disobedient and self-destructive behavior by enabling a youth to disobey with impunity the express and repeated directions of a Judge that such behavior not continue. No one would question the propriety of a juvenile delinquency criminal mischief petition against Asia if she kicked and damaged a door at Montfort House or at home. Yet, there are cries of foul and emotional “bootstrapping” claims when the same individual chooses to ignore the law and the command of the court, particularly one that is issued for the *32 protection of others and for the benefit of the individual. Is not the sheer contempt of the court’s mandate a serious affront to the rules of organized society? What has really happened in this dangerous scenario is that Asia has simply challenged the authority of the court, much like the youth in Jennifer G. (supra). She has decided that she is above the law, beyond control or restriction, free to act contumaciously and with total disdain for the Family Court Judge who literally begged her not to misbehave. Under the circumstances, there must be a response, a reaction, a method of communicating the message that the laws, orders and mandates of our institutions and our society must be complied with. Hence, we have the instant proceeding which charges the underlying act of criminal contempt, which, in the court’s mind, is not unlike any other juvenile delinquency petition arsing out of criminal behavior by a so-called “status offender.”
A child who is in front of the court and who is subject to its lawful orders and mandates is not immune solely because that child was handed the order or mandate as a PINS. An order that is clearly and explicitly directed at an individual must be obeyed irrespective of the classification of the individual as a PINS. If it is not obeyed, there must be consequences and sanctions; otherwise there is mockery and a total loss of structure. Hence, our society permits there to be criminal penalties for wilful disregard of judicial mandates.
The notion that a status offender (PINS) may be subject to criminal sanction and secure detention if there is the intentional disobedience of a lawful order was recognized by the Federal Government when it enacted the Juvenile Justice and Delinquency Act of 1974 (Pub L 93-415, 88 US Stat 1109). Indeed, as discussed by Judge DePhillips in Matter of Jennifer G. (supra), the very Federal statute which gave rise to New York’s elimination of secure detention for persons in need of supervision actually permitted the secure detention of a status offender who violates a valid court order. The so-called “valid court order” exception to the prohibition of secure detention of status offenders in the Federal statute is clear. (See, 42 USC § 5633.) Although New York did not explicitly enact such an exception, the fact that the Federal Government recognized the need to have the courts enforce their own orders is persuasive and noteworthy. The Federal statute explicitly recognized the fact that no legislative act can remove from the Judiciary its inherent power to enforce its own orders.
In the final analysis, there is nothing facially illegal or improper about this juvenile delinquency petition. The respon *33 dent asserts that the petition is in violation of the law, but her assertion is without support or foundation.
The court has every right — and every responsibility — to entertain this delinquency proceeding. In every sense, jurisdictional, procedural and factual, the charge of criminal contempt is appropriate and otherwise consistent with the Family Court Act.