OPINION OF THE COURT
James C. Harberson, J.
Nancy C. (date of birth July 10,1984) is charged under Penal Law § 215.50 (3) for leaving the Jefferson County Children’s Home, a nonsecure residential facility, on August 22, 2000 without permission. She had been placed there by an extension of placement order signed by Jefferson County Family Court Judge Richard Hunt, dated January 28, 2000 until November 30, 2000. She had been adjudicated a person in need of supervision (PINS) under article 7 of the Family Court Act by the same court on February 1, 1999.
Ryan E. (date of birth Nov. 11, 1983) was charged under Penal Law § 215.50 (3) for leaving the Jefferson County Children’s Home, a nonsecure detention facility, on April 3, 2000 without permission. He had been placed there by a Family Court order under article 3 of the Family Court Act as a person alleged to be a juvenile delinquent (JD) by order dated August 30, 1999 by Herkimer County Family Court Judge Henry LaRaia until further order of that court.
The simple issue in these cases is whether Penal Law § 215.50 (3), criminal contempt, was meant by the Legislature to apply to Family Court dispositional orders issued under articles 3 (juvenile delinquency) and 7 (persons in need of supervision) of the Family Court Act. The People argue that after age 16 any person subject to such dispositional orders can be charged under Penal Law § 215.50 (3) for any violation of its terms. The defense argues to the contrary on a number of legal grounds.
The Court of Appeals in People v Prescott (95 NY2d 655) ruled on a similar question of whether a section of the Penal Law could be applied to two chapters of the Vehicle and Traffic Law. This Court finds the reasoning of Prescott can be used to inform the Court in deciding this case.
The People argue that Penal Law § 215.50 (3) does apply to article 3 or 7 dispositional orders and a juvenile subject to one at age 16 who violates any of its terms can be charged with a crime under it.
The Court finds “[W]hile that may well be true in theory * * * the Legislature did not contemplate” (Prescott, supra, at 663) that offense was to be applied to an article 3 or 7 *385 dispositional order. Even though a juvenile’s disobedience, then, “could theoretically be punished under [section 215.50 (3)] of the Penal Law, this would not comport with the intent of [articles 3 and 7] of the [Family Court Act]” (Prescott, supra, at 662).
The People would agree that the following cases are in point. In Matter of Asia H. (184 Misc 2d 27), Matter of Jennifer G. (182 Misc 2d 278) and Matter of Kimberly A. P. (178 Misc 2d 180), the courts all found no reason not to use Penal Law § 215.50 (3) against a PINS before the age of 16 when a term of an article 7 dispositional order was violated so as to convert the PINS to a JD to be able to use a secure detention facility. This current effort at “bootstrapping” was specifically rejected in Matter of Freeman (103 Misc 2d 649). These cases, in any event, are distinguishable from the ones before this Court because the PINS and JD are charged not in Family Court with violating Penal Law § 215.50 (3) but rather in a local criminal court because they are 16 and as a result face a penal sanction.
In People v Prescott, the Court rejected the application of Penal Law § 110.00 (attempt to commit a crime) to Vehicle and Traffic Law articles 31 and 20. The Court said “the People are asking the courts to create an offense not contemplated by the detailed statutory scheme.” (Prescott, supra, at 661.) The Court ruled, after acknowledging while such was theoretically possible, that “in light of the distinct nature of article 31 [and article 20] of the Vehicle and Traffic Law, the statute’s exclusive penalties, and the highly integrated statutory scheme, the Legislature did not contemplate” (Prescott, supra, at 663) adding another offense arising from the proscribed conduct. The Court concluded, “[a] determination otherwise would only lead to judicial and administrative confusion” (Prescott, supra, at 663).
There can be no question that articles 3 and 7 of the Family Court Act have a “distinct nature.” In Matter of Samuel W. v Family Ct. (24 NY2d 196, 197), the Court defined family law as a “special system of law for treating young juvenile offenders”; or, as one commentator stated, “[t]he juvenile court was expected to become the center of society’s efforts to help children and families in trouble.” (See, Besharov, Practice Commentaries, McKinney’s Cons Law of NY, Book 29A, Family Ct Act § 711, at 10.)
Like Vehicle and Traffic Law articles 31 and 20, articles 3 and 7 of the Family Court Act were enacted by the Legislature *386 in “response” to “a dominant social issue” (Prescott, supra, at 659; see, L 1962, ch 686; L 1982, ch 920, § 3.) Articles 3 and 7 deal with the timeless “dominant” social issue found in all societies throughout history of how to deal with juveniles that were “incorrigible, ungovernable or habitually disobedient” and/or truant from school and “beyond the lawful control” of parents or guardians (art 7, § 712 [a]) as well as those juveniles whose conduct would be criminal if engaged in by an adult (art 3, § 301.2 [1]).
Articles 3 and 7 of the Family Court Act are based on an “altruistic theory” (Matter of Lavette M., 35 NY2d 136, 142) that rests on various “deterministic assumptions” (McKeiver v Pennsylvania, 403 US 528, 551), one of which is that “the juvenile respondent * * * generally lacks the mental and emotional maturity of an adult” (People ex rel. Wayburn v Schupf, 47 AD2d 79, 83, 39 NY2d 682). In Matter of Kingsley (183 Misc 727, 730), the court said while in a juvenile’s case the “commission of a crime itself often may reflect the intent to so do, Children often act thoughtlessly, without deliberation, without intent * * * [as] creatures of * * * the environment in which they have been reared.”
Thus, the theory is that “ [R] eprehensible acts by juveniles are not deemed the consequence of mature and malevolent choice [but, rather, on the ‘deterministic assumption’ such acts resulted from] environmental pressures (or lack of them) or of other forces beyond their control.” (McKeiver, supra, at 551.)
The “finding of delinquency or PINS requires a basis of a finding of a condition showing need for the attention of the court.” (Matter of Ronny, 40 Misc 2d 194, 197.) Once this “condition” has been found to exist, then “[p]robation officers, social workers, psychologists, psychiatrists, and the whole range of helping professions were to assist the juvenile court judge in diagnosing the child’s treatment needs and in providing the treatment.” (Besharov, Practice Commentaries, supra, at 10.) This “rehabilitative process [is] * * * a key feature of the juvenile system” and “the central goal of any juvenile proceeding.” (Matter of Benjamin L., 92 NY2d 660, 670.) As present Chief Judge of the Court of Appeals Judith Kaye plainly stated in Matter of Randy K. (77 NY2d 398, 409), “[u]nlike criminal prosecutions, punishment is not a purpose of ¡juvenile] proceedings.”
In order to help such children the Legislature did not provide for in articles 3 and 7 “exclusive penalties” (Prescott, at 663), but rather, in keeping with the legislative purposes not to punish the child, each article had “exclusive” remedies as part of *387 an overall “highly integrated statutory scheme” as set out in detail in the eight parts of each article to provide for the determination of the need for the State's intervention, the nature and scope of this effort as well as limitations on it to comply with the requirements of constitutional due process.
In contrast to this specific exclusion of a penal sanction as part of articles 3 and 7 of the Family Court Act, Penal Law § 215.50 (3) was enacted by the Legislature to punish one for willful disobedience of a court order: “[I]ntentional disobedience or resistance to the lawful process or other mandate of a court” (Penal Law § 215.50 [3]).
The legislative intent behind Penal Law § 215.50 (3) is to punish in the name of the People one who intentionally disobeys a court order to “vindicate the public's interest in the administration of justice generally” (People v Paperno, 98 Misc 2d 99, 106).
In People ex rel. Sherwin v Mead (92 NY 415), the Court said (at 420), “[o]ne who disobeys the lawful order of a court not only offends against the dignity of the particular tribunal, but also against the public law. The particular court may pass over the contempt and suffer its order to be spurned, but the offense against the people remains. Their authority has been condemned, the administration of public justice assailed, and its power despised. For such an offense the guilty party may be punished by indictment, although the court whose order has been disobeyed may take the indignity in silence. The statute has made such disobedience, when willful in its character, an offense against the people, and not left it dependent upon the action or non-action of the specific judge or court.” (See also, People v Leone, 44 NY2d 315.)
The legislative intent behind articles 3 and 7 dispositional orders “reflects a deliberate and calculated plan to place [PINS and JDs] in authorized agencies for treatment and rehabilitation and not to commit them to penal institutions” Matter of Anonymous v People, 20 AD2d 395, 400). Articles 3 and 7 provide for continued supervision past the age of 16 at locations authorized by those statutes for PINS and JDs, as the case may be, so long as it “appears [a] longer commitment will insure rehabilitative treatment” that will present a likelihood of progress. (Matter of Lawrence D., 125 Misc 2d 944, 952, 953.)
It is a given that inherent in this whole effort is the fact the juvenile is expected to a greater or lesser degree to be disobedient and resistive to mating a change in his or her attitude so *388 that with some it will take longer than with others to achieve the hoped for reform. To accommodate this expected behavior by the juvenile, great latitude is given to the Family Court Judge to use all the resources available to the court short of punishment to respond to the juvenile’s reactions to the court’s efforts by refashioning the rehabilitative plan and to extend the dispositional order past age 16 to allow time for the revised plan to work.
If instead, at age 16, these expected major or minor acts of disobedience of a dispositional order are seen “as an offense against the People” that requires a criminal punishment in response “to vindicate the public’s interest in the administration of justice generally^’ (Paperno, at 106) resulting in the juvenile being charged at the whim of any law enforcement authority or prosecutor under Penal Law § 215.50 (3) before a local criminal court judge, then, the whole effort of the “People” as parens patriae to rehabilitate the juvenile under article 3 or 7 is jeopardized, if not destroyed. For this Court to find that Penal Law § 215.50 (3) applies to Family Court dispositional orders would be counterintuitive as well as pernicious. This is because of the counterproductive effect it would have on a Family Court Judge’s efforts to rehabilitate the juvenile within the shelter of the Family Court surroundings.
It is the decision of this Court based on Prescott that while in theory Penal Law § 215.50 (3) might be applied to Family Court Act articles 3 and 7 dispositional orders it was not the Legislature’s intent because to do so would incorporate criminal punishment into the remedies available in articles 3 and 7 to rehabilitate the JD or PINS.
The charges of violating Penal Law § 215.50 (3) against Nancy C. and Ryan E. are dismissed.