[727 NYS2d 124]

In the Matter of NAQUAN J., Appellant.

Second Department, June 18, 2001

**APPEARANCES OF COUNSEL**

*Monica Drinane,* New York City (*Gary S. Solomon* of counsel), for appellant.

**OPINION OF THE COURT**

SANTUCCI, J. P.

On this appeal we are presented with the opportunity to address an issue which has resulted in considerable frustration amongst Family Court judges. Specifically, we consider whether the Family Court has the authority to compel compliance with its orders, by a person in need of supervision (hereinafter a PINS), through the issuance of criminal contempt orders or the commitment to a secure detention facility. Although we conclude that the Family Court Act precludes such measures, we believe that the Legislature should revisit the issue.

In November 1998, Naquan J.'s grandmother commenced a proceeding pursuant to Family Court Act article 7 to determine whether he was a PINS. On January 25, 2000, about six months after Naquan's 16th birthday, the Family Court adjudicated Naquan to be a PINS and placed him in a residential treatment center for a period of 12 months. In the period before and after the PINS disposition, Naquan persistently disobeyed the Family Court's orders and his failure to stay in various placement facilities resulted in more than 30 warrants

for his arrest. Consequently, the Family Court, on its own motion by order to show cause, initiated two successive proceedings pursuant to Family Court Act § 156 and Judiciary Law § 750 to punish Naquan for criminal contempt of court. Upon finding that Naquan was guilty of criminal contempt, the Family Court issued a series of orders which, *inter alia,* committed him to the New York City Department of Correction.

Naquan J. appeals from stated portions of the two contempt orders and the four commitment orders. By decisions and orders on motions dated March 24, 2000, and June 16, 2000, this Court stayed enforcement of the Family Court commitment orders dated March 15, 2000, and May 24, 2000, respectively, pending the hearing and determination of these appeals.

On appeal, Naquan J. primarily contends that the Family Court did not have the authority to use the power of contempt to enforce the orders issued in a PINS proceeding, and that filing criminal contempt charges based upon PINS-type behavior constituted "illegal bootstrapping."

Judiciary Law § 750 gives a court of record the power to punish for criminal contempt any person who is guilty of, among other acts, the willful disobedience of its lawful mandate. Although the Family Court is a court of record, Family Court Act § 156 limits its contempt power as follows:

> "The provisions of the judiciary law relating to civil and criminal contempts shall apply to the family court in any proceeding in which it has jurisdiction under this act or any other law, and a violation of an order of the family court in any such proceeding which directs a party, person, association, agency, institution, partnership or corporation to do an act or refrain from doing an act shall be punishable under such provisions of the judiciary law, *unless a specific punishment or other remedy for such violation is provided in this act or any other law"*
> (emphasis supplied).

In light of the language emphasized above, the Family Court must determine whether there is a specific punishment or other remedy for the violation of a court order that supersedes the contempt sanction.

As stated in Family Court Act § 711, the purpose of article 7 of the Family Court Act is to provide "due process of law (a) for considering a claim that a person is in need of supervision and

(b) for devising an appropriate order of disposition for any person adjudged in need of supervision." Toward that end, the Family Court Act specifies certain rights and remedies.

For instance, after a PINS petition is filed, the Family Court may, in its discretion, release the respondent or direct his or her detention if it finds that there is a "substantial probability that he [or she] will not appear in court on the return date" or "there is a serious risk that he [or she] may before the return date do an act which if committed by an adult would constitute a crime" (Family Ct Act § 739 [a] [i], [ii]). As a general rule, however, the court may not detain a PINS respondent for more than six days (see, Family Ct Act § 739 [b]). If the PINS respondent thereafter runs away from his or her home or from the custody of the Administration for Children's Services (hereinafter ACS) where he or she was temporarily placed, a police officer is authorized to return that individual back home or to the custody of ACS. However, Family Court Act § 720 (1) provides that "[n]o child to whom the provisions of this article may apply, shall be detained in any prison, jail, lockup, or other place used for adults convicted of crime or under arrest and charged with a crime," and section 720 (2) provides that "[t]he detention of a child in a secure detention facility shall not be directed under any provision of this article."

After a child is adjudicated to be a PINS, Family Court Act § 754 (1) lists four dispositional alternatives that are available to it: (1) discharge the child with a warning; (2) suspend judgment in accordance with the provisions of Family Court Act § 755; (3) continue the proceeding and place the child in accordance with the provisions of Family Court Act § 756; or (4) put the child on probation in accordance with the provisions of Family Court Act § 757 (see, Family Ct Act § 754 [1]).

Significantly, if the child fails to comply with the terms and conditions of the dispositional alternative imposed at the time of the PINS adjudication, article 7 provides the Family Court with specific remedies (see, Family Ct Act §§ 777, 778 and 779 [all of which essentially state that the court may, upon competent proof that the respondent has violated the order, revoke its original order and make any order that might have been made at the time the original order was made]). Finally, the Family Court also may transfer a PINS to another placement facility upon a finding that he or she is "incorrigible and that his or her presence is seriously detrimental to the welfare of the applicant institution, society, agency or other persons in its care" (Family Ct Act § 773 [a]). However, none of these rem-

edies include criminal contempt or the commitment of a PINS individual to a secure detention facility. Therefore, even when faced with a situation where the PINS respondent persistently absconds from every nonsecure placement facility in which he or she has been placed, the Family Court may not rely on such circumstances to compel placement in a secure facility.

Notwithstanding the foregoing provisions, the Family Court in this case determined that article 7 did not provide an adequate remedy for Naquan's chronic runaway behavior and persistent disobedience of court orders. Thus, the court relied on Judiciary Law § 750 to issue orders of criminal contempt, followed by orders that committed Naquan to secure detention facilities. According to Judge Hepner, a PINS respondent is not exempt from criminal contempt charges based on the willful disobedience of clear court mandates.

Although there are no appellate cases which directly deal with the factual situation presented herein, it has been held that the Family Court exceeded its statutory authority by issuing contempt orders in other types of proceedings (see, Michael N. G. v Elsa R., 233 AD2d 264 [in a child custody proceeding, the Family Court could not resort to the contempt statute because the Family Court Act contains a specific remedy for the enforcement of visitation orders]; see also, Matter of Murray, 98 AD2d 93).

As a general rule in this country, the confinement of runaway-status offenders in secure facilities, by prosecuting them in juvenile delinquency, criminal, or contempt proceedings, is not permitted. On the other hand, some states have held that the juvenile court may exercise its inherent contempt power to incarcerate a child in need of services in a secure detention facility for violating a juvenile dispositional order. For instance, in the case of In Interest of D.L.D. (110 Wis 2d 168, 327 NW2d 682), the court held that a status offender may be found in contempt and incarcerated if the following conditions are met: (1) the juvenile is given sufficient notice to comply with the order and understands its provisions; (2) the violation of the court order is egregious; (3) less restrictive alternatives were considered and found to be ineffective; and (4) special confinement conditions are arranged (see also, In re Michael G., 44 Cal 3d 283, 747 P2d 1152 [adopting the same standards]).

In the case before us, there is no doubt that the appellant displayed obvious disrespect for court orders by his chronic runaway behavior; and that ACS was unable to provide ade-

quate supervision in these exigent circumstances. Nevertheless, the Family Court did not have the statutory authority to issue the subject contempt orders and commit Naquan to secure detention facilities. Nor was it permissible for the court to employ a "bootstrapping" process and use its inherent contempt power to punish this runaway status offender with criminal consequences.

Of course, it can be fairly argued that the Family Court Act is not adequate to deal with the egregious circumstances of the case at bar. In this regard, we note with concern and understanding the opinions expressed from the "front lines" in two recent Family Court decisions, although we do not necessarily countenance the results. In *Matter of Kimberly A. P.* (178 Misc 2d 180), the Family Court, Jefferson County, held that the respondent, who was placed in foster care during a PINS proceeding and left in a nonsecure detention facility without permission, could not be charged with escape in the second degree (*see*, Penal Law § 205.10), which occurs when a person escapes from a detention facility, but could be charged with criminal contempt in the second degree (*see*, Penal Law § 215.50 [3]), which occurs when a person intentionally disobeys a court mandate. Accordingly, the Family Court refused to dismiss that count of the juvenile delinquency petition which alleged that the respondent committed acts which, if committed by an adult, would constitute the crime of criminal contempt in the second degree.

In *Matter of Asia H.* (184 Misc 2d 27), a 15-year-old girl moved to dismiss a juvenile delinquency petition on the ground that it illegally bootstrapped a PINS proceeding into a juvenile delinquency proceeding based on allegations that she violated a temporary order of protection entered in the pending PINS proceeding by engaging in threats and violent acts at a nonsecure detention facility. However, the Family Court, Suffolk County, held that the Family Court Act does not prohibit the filing of a juvenile delinquency petition charging criminal contempt in the second degree arising out of the intentional disobedience of a lawful court mandate by a PINS.

As these cases demonstrate, Family Court judges are forced to resort to "creative" reasoning in their earnest attempt to simply compel compliance with their orders. Indeed, under the Family Court Act, as it is presently drafted, Family Court judges are caught between a "rock and a hard place," since they are charged with the responsibility for PINS runaway behavior, but are denied the judicial tools to effectively deal

with such conduct, especially when it is as arrant as the situation presented herein. No other court is similarly denied the means to enforce its own orders or judgments.

As several other jurisdictions have recognized, the solution to the problem of recidivist runaway PINS behavior lies with the Legislature. For instance, in the case of *Commonwealth v Florence F.* (429 Mass 523, 529, 709 NE2d 418, 422), the Massachusetts appellate court held that the juvenile court did not have the authority to issue contempt orders for the violation of custody dispositions in a "children in need of services" proceeding, and urged the Legislature to adopt a procedure "that better suits the needs of the children in need of protection, the families who are faced with this problem, and the judges who are asked to enforce the laws" (*see also, W. M. v State of Indiana,* 437 NE2d 1028 [Ind]; *In Interest of Tasseing H.,* 281 Pa Super 400, 422 A2d 530). In fact, faced with similar concerns, some jurisdictions have amended their statutes to provide their Family Court judges with a method to deal with those individuals who repeatedly violate their orders (*see, In re Michael G., supra; In Interest of J.E.S.,* 817 P2d 508 [Colo]; *G.S. v State of Florida,* 709 So 2d 122 [Fla]). We now add our collective voice to importuning the New York State Legislature to address this widespread problem, and fashion a remedy whereby the Family Court can fairly and effectively deal with the flagrant and repeated violation of its orders by PINS individuals, without abdicating its foundational purpose to provide a *parens patriae* role to such persons.

Accordingly, the contempt orders and the commitment orders are reversed insofar as appealed from, and the contempt proceedings are dismissed.

S. MILLER, GOLDSTEIN and FRIEDMANN, JJ., concur.

Ordered that the orders are reversed insofar as appealed from, without costs or disbursements, and the contempt proceedings are dismissed.