[679 NYS2d 104]

In the Matter of BERNARD G., a Person Alleged to be a Juvenile Delinquent, Appellant.

First Department, October 1, 1998

## APPEARANCES OF COUNSEL

*Marcia Egger* of counsel (*Jane M. Spinak,* attorney), for appellant.

*Sharyn Rootenberg* of counsel (*Jeffrey D. Friedlander,* attorney), for presentment agency.

## OPINION OF THE COURT

ROSENBERGER, J.

On the afternoon of March 2, 1997, while on uniform duty patrolling the Port Authority Bus Terminal, Officer Peter Hernandez observed appellant and another teenager walking around in a manner that suggested they were lost. Judging from appellant's unkempt appearance, Officer Hernandez suspected that the boys were runaways, and approached them to question them. Appellant, who claimed he was 16 years of age, gave evasive answers to questions about his birth date and whether he had permission to be in Manhattan. Pursuant to Family Court Act § 718, Officer Hernandez took the boys into protective custody and transported them to the Youth Services Office (YSO) to verify their identity and determine whether they were runaways. Throughout this period, appellant was carrying a large plastic shopping bag.

At the YSO, Officer Stephen Bocian took over the investigation. He asked appellant if the bag belonged to him. Appellant denied ownership of the bag. He said he had found it and did not know what was in it. In response to Officer Bocian's other questions, appellant claimed to be 17 years of age, said that he did not have identification, and said that, due to a recent move, he did not know where in Brooklyn he lived.

Officer Bocian asked appellant to put the bag down on a desk near them, for fear that appellant might take drugs or a weapon out of the bag to harm himself. Officer Bocian then patted down appellant for weapons, and, finding none, told appellant to empty his pockets. (At the suppression hearing, Officer Bocian explained that this was his standard procedure, because he has seen juveniles take out ingestible drugs or weapons from their pockets with which they could injure themselves or others.) Appellant removed two jars of marihuana from his pocket, at which time Officer Bocian told appellant to sit down and that he was under arrest.

After another half hour of questioning, appellant still had not provided accurate information about his age, residence, or family situation. A computer search of appellant's name was not helpful either. Officer Bocian then searched the shopping bag, looking for identification and more drugs. That search revealed 38 vials of crack, a small bag of crack and five small jars of marihuana. The petition against appellant was based entirely on the cocaine, rather than the small amount of marihuana recovered.

A *Mapp* hearing was held on March 18 and 20, 1997. The hearing court denied appellant's suppression motion. Subsequently, appellant admitted to fifth-degree possession of a controlled substance, in full satisfaction of the petition. He was adjudicated a juvenile delinquent and placed with the New York State Division for Youth (DFY) for 18 months.

■■ Appellant contends that his detention was improper, that the search of his pockets exceeded the scope of a permissible pat-down search and that the search of the bag was improper. We agree that the search of appellant's pockets was improper; however, we affirm because there is an independent justification for the taking of the bag and its subsequent search.

Officer Hernandez had probable cause to detain appellant as a suspected runaway. Appellant looked young and lost, was not clean and gave evasive and incomprehensible answers to the officer's questions. The Port Authority Bus Terminal is a location often frequented by teenage runaways (*Matter of Terrence G.*, 109 AD2d 440, 447).

The pat-down search for weapons was also justified. Family Court Act § 718 is a noncriminal statute enacted for the protection of juveniles such as appellant. The police may frisk a juvenile who is in custody pursuant to this statute, "[t]o ensure the safety of [the juvenile], other detained runaways and themselves," particularly where, as here, he is held in an area where other detained youths are present (109 AD2d, *supra,* at 447).

■ However, having found no weapons in this limited search, the police had no authority to ask appellant to empty his pockets, which was the equivalent of searching his pockets themselves (*see, People v Lipscomb*, 179 AD2d 1043, 1044). By referring to a detention under Family Court Act § 718 as a " 'full custodial arrest' " (*Matter of Jamel J.*, 246 AD2d 388, 389; *Matter of Mark Anthony G.*, 169 AD2d 89, 93; *Matter of Michael J.*, 233 AD2d 198, 199; *Matter of Terrence G., supra*, 109 AD2d, at 447), this Court may have created the misleading impression that such detention has the same Fourth Amendment implications as a regular criminal arrest, i.e., that it justifies a full warrantless search of the person. This is not the law. Unless some other exception to the search warrant rule applies, such as consent or emergency, noncriminal custodial arrest, by itself, only authorizes a pat-down frisk.

Closer analysis of the above-cited cases bears this out. In *Jamel J.* (246 AD2d 388, *supra*) and *Michael J.* (*supra*, 233 AD2d, at 199), the police conducted only a pat down, during which the drugs were discovered. In *Mark Anthony G.* (*supra*) the officer's pat-down search extended to the bag that the juvenile was still holding, because it could have contained a weapon. Upon feeling the outline of a weapon, the officer properly conducted a more extensive search of the bag. Only in dictum, as an alternative justification for the search, did we conflate a Family Court Act § 718 custodial arrest with a criminal arrest (169 AD2d, *supra*, at 93). As for *Terrence G.* (*supra*, at 446), we emphasized that "the search complained of here was not a full custodial search * * * [but] a patdown search," which is "the least intrusive method by which an arresting officer may discover and confiscate a dangerous weapon".

The Court of Appeals has implicitly adopted the view that a custodial arrest of a suspected runaway only justifies a frisk, and that a full search requires either a criminal arrest or some other exception to the warrant rule. In *Matter of Marrhonda G.* (81 NY2d 942), the juvenile was detained under Family Court Act § 718 and taken to the Port Authority YSO. She placed her bag on the floor about 15 feet away from her. When an officer picked it up to move it out of the way, he felt the outline of a weapon, so he opened the bag. His search uncovered four weapons and ammunition (*supra*, at 944). The Court of Appeals suppressed the evidence taken from the bag because it rejected the proffered "plain-touch" exception. The Court held: "In the absence of some other applicable exception to the warrant requirement, the warrantless search of respondent's bag

was unjustified. * * * The officers could have justifiably searched the bag if it had been within respondent's 'grabbable area', if respondent had consented to the search, *or if respondent had been placed under arrest and the bag then searched as an incident thereto*" (*supra,* at 945 [emphasis added]). Clearly, the Court of Appeals holds that with respect to the scope of a permissible warrantless search, there is a difference between a custodial arrest and a criminal arrest.

Similarly, in *Matter of Marangeli M.* (199 AD2d 189, 190, *lv denied* 84 NY2d 803), this Court held that the officer could have frisked the detained juvenile but should not have searched her bag for identification, where he had no belief that the bag contained a weapon. We suppressed the cocaine found therein.

In *People v Diaz* (81 NY2d 106), the Court of Appeals held that a search of a suspect's pockets exceeds the scope of a weapons frisk if the officer does not believe that the pockets contain weapons. The officer conducted a protective patdown and felt a bulge in the suspect's pocket which did not feel like a weapon, but instead felt like vials. He reached into the pocket and removed 18 vials of crack. The Court rejected the People's "plain-touch" argument: having satisfied himself that there was no weapon, the officer could not search further to satisfy any other suspicions aroused during the frisk, unless some other exception to the warrant rule applied (*supra,* at 109; *see also, People v Lipscomb,* 179 AD2d 1043, 1044, *supra; Matter of D'Angelo H.,* 184 AD2d 1039, 1040, *lv denied* 80 NY2d 758; *Matter of Adam M.,* 217 AD2d 628).

The foregoing discussion applies to the search of appellant's pockets. The matter does not end there, however.

■ To the extent that appellant had any possessory interest in the shopping bag at all, we hold that he surrendered it when he disclaimed ownership and told Officer Bocian that he merely found the bag. Personal Property Law § 252 (1) provides that a finder of lost property must hand it over to the owner, or to the police, who will then search for the owner. When appellant characterized the bag as found property and professed ignorance as to its owner and its contents, Officer Bocian had an obligation, as set forth in section 253 (1), to take custody of the property and investigate it. The action taken by the officer with regard to the bag was not only permissible but mandated by statute.

Accordingly, the order of disposition, Family Court, New York County (Leah Marks, J.), entered on or about April 9,

1997, adjudicating appellant a juvenile delinquent and placing him with the DFY for an initial period of 18 months upon his admission that he had committed acts which, if committed by an adult, would have constituted the crime of criminal possession of a controlled substance in the fifth degree, should be affirmed, without costs.

SULLIVAN, J. P., MILONAS and ANDRIAS, JJ., concur.

Order of disposition, Family Court, New York County, entered on or about April 9, 1997, affirmed, without costs.