[742 NYS2d 53]

In the Matter of EDWIN G., a Person Alleged to be a Juvenile Delinquent, Appellant.

First Department, May 16, 2002

**APPEARANCES OF COUNSEL**

*Gary Solomon* of counsel (*Darlene Jorif* on the brief; *Monica Drinane, The Legal Aid Society, Juvenile Rights Division,* attorney), for appellant.

*Dona B. Morris* of counsel (*Francis F. Caputo* on the brief; *Michael A. Cardozo, Corporation Counsel* of New York City, attorney), for presentment agency.

### OPINION OF THE COURT

Tom, J.

The primary issue before us is whether Family Court was empowered to impose the sanction of criminal contempt to punish a recalcitrant person in need of supervision (PINS). This Court has not previously addressed this issue. For the reasons set forth below, we join the Second Department in concluding that such a power is not provided for in the Family Court Act and is beyond the Family Court's jurisdiction.

Appellant is 15 years old, with an apparent history of psychiatric disturbances and altercations with various family members, particularly Hecksan R., appellant's uncle and legal guardian. On March 31, 2000, Family Court adjudicated appellant a PINS and placed him with the Administration for Children's Services (ACS) for a 12-month period. The court specifically made findings that: he had engaged in a pattern of harassment against his uncle, he had threatened him with physical force, he had threatened to cut the face of a member of his uncle's family, he engaged in menacing with the threat of retaliation, he abused alcohol, he was chronically truant and he was repeatedly oppositional and defiant. The court also found that appellant refused to take his psychotropic medication as prescribed by his treating psychiatrist. The court concluded that he required continued psychiatric treatment and supervision predicated in part on the psychiatric discharge summary of Bronx Children's Psychiatric Center. The court ordered ACS to expedite residential placement in accordance with the discharge plan.

Family Court also issued an amended order of protection, effective until March 31, 2001, on behalf of appellant's uncle and the uncle's family. The order of protection included certain specific terms as to conduct from which appellant was to refrain, which are not presently relevant. However, additional terms are pertinent to the matter before us. Appellant was also ordered to cooperate with his order of placement and to cooperate with the psychological counseling. More particularly, he was warned not to abscond. The formal order then reflected these terms. The Court made clear that "[i]f you violate that order in any fashion, I will refer this to the Corporation Counsel to be prosecuted for criminal contempt, which means

then that you may face the possibility of being detained, not in a residential treatment center, but in a limited secure facility Upstate. Do you understand me * * *." Appellant answered affirmatively. The court then repeated: "[d]o you understand that if you violate the terms of the Order of Protection that I'm issuing as well as the order that places you, that the consequences of that is prosecution for criminal contempt," and again elicited an affirmative response.

Appellant's good behavior did not survive that day. Paul Jones, an ACS employee, testified subsequently at the fact-finding hearing that at about 12:30 that afternoon, appellant, accompanied by a court officer, appeared in his office in the courthouse and requested to use the bathroom. Jones accompanied appellant to the bathroom, and back again to his office. About 15 minutes later, appellant asked to use the bathroom again. Jones at that time had another child in his office, whom he could not leave, so he allowed appellant to use the bathroom unescorted, on condition that appellant leave his book bag in Jones' office. Appellant failed to return. Jones appeared in Family Court that afternoon to obtain a bench warrant, which the court issued pursuant to Family Court Act § 738. Jones testified that appellant had not reappeared by the time he left at about 4:30. Another ACS employee, Fidelia Igbudu, testified that he had not reappeared in the courthouse's ACS office by the time she left at about 6:30 to 7:00 P.M. that evening. Appellant's uncle also testified that he spoke to appellant on April 1, 2000, and recommended that appellant return to court, but that appellant declined. Appellant admitted to the uncle that he had run away from the courthouse the prior day.

On April 4, 2000, appellant did turn himself in on the warrant. At that time, Family Court offered not to commence a delinquency proceeding if appellant agreed to comply with its placement directive. When appellant declined to do so, the court directed the presentment agency to file a juvenile delinquency petition charging appellant with criminal contempt. On April 7, 2000, the petition was filed, alleging that appellant committed acts which, if committed by an adult, would constitute the crime of criminal contempt in the second degree under Penal Law § 215.50 (3).

On April 11, 2000, appellant's counsel filed an order to show cause moving for dismissal on the ground that Family Court lacked the authority to issue the initial order that had directed appellant not to abscond, and that Family Court Act section 778 sets forth exclusive remedies if a child fails to comply with

the terms of a PINS order. Appellant contended that section 778 provides for a return to court and re-placement in another facility, when a PINS appellant absconds from placement, which necessarily bars a sanction of criminal contempt. Moreover, appellant argued that the use of secure detention of PINS appellants is prohibited under New York law, barring prosecution of contempt charges in a delinquency proceeding for absconding, which is only "PINS-like" behavior. Family Court denied the motion. The fact-finding hearing was commenced at which the testimony noted above was adduced. The court then found that, "[t]here has been an establishment of criminal contempt in the second degree in that appellant intentionally violated the dispositional directives by the court." On June 15, 2000, the court adjudicated appellant a juvenile delinquent and placed him with the State Office of Children and Family Services for a period of 12 months. Under the order, the Office of Children and Family Services was authorized to place appellant in a nonsecure or limited secure facility.

The primary, and ultimately dispositive, issue is whether Family Court was so empowered to impose a sanction of criminal contempt against a PINS appellant who violated a PINS dispositional order.

The Judiciary Law broadly empowers courts of record to adjudge in contempt persons who willfully violate lawful court orders or directives (Judiciary Law § 750). With reference to the power of contempt, however, the Family Court Act restricts its application in proceedings under the Family Court Act. Section 156 states that: "[t]he provisions of the judiciary law relating to civil and criminal contempts shall apply to the family court in any proceeding in which it has jurisdiction under this act or any other law, and a violation of an order of the family court in any such proceeding which directs a party, person, association, agency, institution, partnership or corporation to do an act or refrain from doing an act shall be punishable under such provisions of the judiciary law, *unless a specific punishment or other remedy for such violation is provided in this act or any other law*" (emphasis added). Under a variety of circumstances, we have consistently found that Family Court lacked contempt power when the Family Court Act provided for other specific remedies (*Michael N.G. v Elsa R.*, 233 AD2d 264; *Matter of Wilson*, 98 AD2d 666; *Matter of Murray*, 98 AD2d 93).

Turning to available PINS dispositional orders, the statute provides only four alternatives, specified in section 754 and elaborated in sections 755 to 756-a and 757, as well as the is-

suance of an order of protection as a condition of any of these dispositional orders. These include discharging the youth with a warning, suspending judgment, continuing the proceeding and placing the youth in accord with section 756 (*supra*), or putting the youth on probation (§ 754 [1]). Specifically, "[a] placement pursuant to this section with the commissioner of social services shall not be directed in any detention facility," except in connection with the youth's transfer to placement (§ 756 [c]). Again, these provisions are couched in terms of placement, if appropriate, and not detention, so that there is no provision that corresponds with the sanction for contempt arising from the violation of a dispositional order.

A person's failure to comply with a PINS order triggers only the remedies in sections 777 to 779. More specifically, under section 778, if the person left the placement institution without permission or without just cause, the court may revoke the order of placement and replace it with any order that might have been made at the time the order of placement had been made or which would be permissible under section 756. Section 756 sets forth a variety of placement options.

Nor is detention in an adult facility a viable remedy for a subject youth's violation of a PINS order. More specifically, section 720 states in its various subdivisions that PINS youths may not be "detained in any prison, jail, lockup, or other place used for adults convicted of crime or under arrest and charged with a crime" (§ 720 [1]), or in any secure detention facility (§ 720 [2]), but may only be placed in a Division for Youth detention facility (§ 720 [3]) or under limited circumstances in a foster care facility (§ 720 [4]). No sanction is available that corresponds with a court's exercise of the power of contempt against a youth who violates a PINS dispositional order.

Family Court has no authority to adjudge a PINS violator in contempt. At most, the PINS violator may be returned to the court for a new dispositional hearing. As such, and as the Second Department ruefully notes, the Family Court under these circumstances lacks the power of contempt and "even when faced with a situation where the PINS [appellant] persistently absconds from every nonsecure placement facility in which he or she has been placed, the Family Court may not rely on such circumstances to compel placement in a secure facility" (*Matter of Naquan J.*, 284 AD2d 1, 5). Hence, the irony is presented that while the court may direct the PINS youth not to abscond, the statutory authority constraining the court essentially precludes an effective remedy should the youth abscond.

As such, we agree with the Second Department that Judiciary Law § 750 does not confer such a power that is otherwise restricted in article 7 of the Family Court Act (*Naquan J., id.; accord Matter of Jasmine A.*, 284 AD2d 452; *Matter of Asia H.*, 289 AD2d 404). We also agree that the court may not therefore "bootstrap" the present PINS proceeding into a juvenile delinquency proceeding under article 3 of the Family Court Act as a means of justifying use of contempt (*Naquan J., supra; Asia H., id.*) as a sanction for what, in sum, is actually PINS-type behavior rather than true delinquency (*Jasmine A., supra*). Finally, we also join with the Second Department in noting the judicial frustration inherent in these situations, and urge the enactment of corrective legislation.

Accordingly, the final order of disposition of the Family Court, Bronx County (Myrna Martinez-Perez, J.), entered on or about June 15, 2000, which adjudicated appellant a juvenile delinquent and placed him with the State Office of Children and Family Services for 12 months, upon a fact-finding determination, that appellant had committed acts that, if committed by an adult, would constitute the crime of criminal contempt in the second degree, should be reversed, on the law, without costs, and the matter remanded for a new dispositional hearing.

WILLIAMS, P.J., SAXE, ROSENBERGER and WALLACH, JJ., concur.

Order of disposition, Family Court, Bronx County, entered on or about June 15, 2000, reversed, on the law, without costs, and the matter remanded for a new dispositional hearing.