[12 NE3d 1054, 989 NYS2d 624]

In the Matter of GABRIELA A., Respondent. PRESENTMENT AGENCY, Appellant.

Argued and submitted February 13, 2014; decided April 8, 2014

**POINTS OF COUNSEL**

*Robert F. Meehan, County Attorney*, White Plains (*Linda M. Trentacoste* and *James Castro-Blanco* of counsel), for appellant. I. Gabriela A. committed acts, which if committed by an adult, would constitute the crimes of obstructing governmental administration in the second degree and resisting arrest. (*People v Graham*, 54 AD3d 1056; *Matter of Victor I.*, 57 AD3d 779; *Matter of Onondaga County District Attorney's Off.*, 92 AD2d 32; *People v Kruger*, 87 AD2d 473; *Matter of Shaunise R.*, 40 AD3d 766; *Matter of Ismaila M.*, 34 AD3d 373; *Willinger v City of New Rochelle*, 212 AD2d 526; *Matter of Samuel VV.*, 217 AD2d 863; *Matter of Shannon B.*, 70 NY2d 458; *People v Romeo*, 9 AD3d 744.) II. A reasonable interpretation of Family Court Act articles 3 and 7 requires that all of the provisions be given the proper effect. (*Matter of Robert J.*, 2 NY3d 339; *Carney v Philippone*, 1

NY3d 333; *Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities,* 19 NY3d 106.) III. The Second Department erred by substituting its own judgment in lieu of deferring to the discretion of the Family Court as to the weight of the evidence that supports Gabriela A.'s adjudication as a juvenile delinquent. (*Matter of Kwan M.,* 159 AD2d 707; *Matter of George R.,* 104 AD3d 949; *Matter of Charles S.,* 41 AD3d 484; *Matter of Daniel B.,* 41 AD3d 711; *Matter of Todd B.,* 190 AD2d 1035; *Matter of Naiquan T.,* 265 AD2d 331.)

*George E. Reed, Jr.,* White Plains, for respondent. I. It is not an act of juvenile delinquency for a PINS (person in need of supervision) respondent to resist being transported to nonsecure detention. (*Matter of Freeman,* 103 Misc 2d 649; *Matter of Dylan C.,* 69 AD3d 127, 16 NY3d 614; *Matter of Daniel I.,* 57 AD3d 666; *Matter of Jenny M.,* 305 AD2d 225; *Matter of Victoria S.,* 297 AD2d 323; *Matter of Edwin G.,* 296 AD2d 7; *Matter of Asia H.,* 289 AD2d 404; *Matter of Jasmine A.,* 284 AD2d 452; *Matter of Naquan J.,* 284 AD2d 1; *Matter of Sylvia H.,* 78 AD2d 875.) II. Resisting arrest and obstructing governmental administration require an authorized arrest. (*Matter of Daniel I.,* 57 AD3d 666; *Matter of Ismaila M.,* 34 AD3d 373; *People v Graham,* 54 AD3d 1056; *Willinger v City of New Rochelle,* 212 AD2d 526; *People v Romeo,* 9 AD3d 744; *Matter of Samuel VV.,* 217 AD2d 863; *Matter of Davan L.,* 91 NY2d 88; *Matter of Quaniqua W.,* 25 AD3d 380; *Matter of Victor I.,* 57 AD3d 779; *Matter of Shaunise R.,* 40 AD3d 766.)

*Steven Banks, The Legal Aid Society,* New York City (*Gary Solomon* of counsel), amicus curiae. A child who violates a court order in a PINS (person in need of supervision) proceeding cannot be prosecuted for that violation as a juvenile delinquent when the allegations encompass absconding from nonsecure custody and other types of victimless conduct typically involved in PINS proceedings. (*Matter of Naquan J.,* 284 AD2d 1; *Matter of Jasmine A.,* 284 AD2d 452; *Matter of Edwin G.,* 296 AD2d 7; *Matter of Bryan JJ.,* 175 AD2d 416; *Matter of Sylvia H.,* 78 AD2d 875; *Matter of Jenny M.,* 305 AD2d 225; *Matter of Daniel I.,* 57 AD3d 666.)

### OPINION OF THE COURT

READ, J.

In August 2011, 15-year-old Gabriela A. was adjudicated a person in need of supervision (PINS) and placed on probation

for one year. Thereafter, she was subject to PINS violation petitions. Additionally, in February 2012, a juvenile delinquency petition was filed against Gabriela A., based on a complaint of physical abuse made by her mother (the February petition). On February 28, 2012, Gabriela A. appeared before Family Court in connection with her PINS violations and the February petition, and the court remanded her to a specified nonsecure detention facility. Gabriela A. immediately absconded from custody, and her probation officer, Amanda Flores, successfully sought a PINS warrant for Gabriela A. to be returned to the nonsecure facility.

On the morning of March 10, 2012, Officer Flores and five other probation officers visited Gabriela A.'s home, based on information she was staying there overnight, to execute the warrant. Gabriela A. acknowledges that she did not comply with the probation officers' directions, but the parties dispute the severity of her resistance. The officers eventually succeeded in taking Gabriela A. into custody and transported her to the nonsecure detention facility.

When Gabriela A. appeared before Family Court on March 23, 2012 to address the PINS violations and the February petition, the Westchester County Attorney (hereafter, the presentment agency) served her counsel with a juvenile delinquency petition based on Gabriela A.'s confrontation with probation officers on March 10th (the March petition). The March petition claimed generally that Gabriela A. violently resisted the officers' attempts to take her into custody and charged her with acts which, if committed by an adult, would constitute the crimes of attempted assault in the second degree (Penal Law §§ 120.05 [1]; 110.00), resisting arrest (Penal Law § 205.30) and obstructing governmental administration (Penal Law § 195.05). Gabriela A. denied the charges. Her attorney argued that the presentment agency was improperly seeking to "bootstrap[ ] . . . a PINS case into a juvenile delinquency case" inasmuch as Gabriela A.'s conduct on March 10th was "classic PINS behavior." After fact-finding, Family Court dismissed and sealed the February petition; disposition of the PINS violations and fact-finding on the March petition were adjourned. The court remanded Gabriela A. to secure detention, citing her history of absconding, the multiple warrants issued for her and the likelihood of reoffending.

The fact-finding hearing on the March petition commenced on March 26, 2012, and continued on April 2 and 3, 2012. On

the first day, the presentment agency submitted a "superseding amended petition," alleging that on March 10, 2012 Gabriela A. had committed acts which, if committed by an adult, would constitute the crimes of resisting arrest (Penal Law § 205.30), obstructing governmental administration (Penal Law § 195.05), attempted assault in the third degree (Penal Law §§ 120.00 [1]; 110.00) and third-degree menacing (Penal Law § 120.15). The court accepted the amended petition over Gabriela A.'s attorney's objections, and started the hearing. The presentment agency called two witnesses, Officer Flores and Officer Tony Ortiz, Jr. Gabriela A. testified on her own behalf.

Officer Flores, who had supervised Gabriela A. since she was adjudicated a PINS in August 2011, testified that after she and another female probation officer roused Gabriela A. at 9:30 a.m. on the morning of March 10th, Gabriela A. ignored repeated directives to get dressed and come along with them and to quit playing with her cell phone and texting friends; she yelled obscenities at the officers and screamed at them to get out of her bedroom. Further, when they "attempted to restrain [Gabriela A.] so [they] could place her securely in handcuffs," she "was not compliant" and "hid[ ] her arms between her body and the wall . . . so [the officers] couldn't grab her arms to restrain her . . . all the while flailing her torso and her shoulders about." Officer Flores described Gabriela A. as "very aggressive," and opined that her behavior "put[ ] everyone in a dangerous situation." Further, "at one point [Gabriela A.] grabbed . . . the open [hand]cuff," which made Officer Flores "extremely nervous" because "[a] handcuff[ ] open in that fashion [could] be used as a weapon." She described leaning her "right shoulder into [Gabriela A.'s] back" to "pry [Gabriela A.'s] fingers off of the cuff." Officer Flores testified that she suffered pain in her right shoulder as a result. On cross-examination, however, Officer Flores conceded that she did not mention this injury or "anything about being afraid of [Gabriela A.]" in a report she wrote shortly after the incident.

Officer Ortiz, who was stationed in the hallway outside Gabriela A.'s bedroom door, testified that she exhibited aggressive behavior and tried to run away down the hallway. He grabbed Gabriela A. because he "didn't want her either running out of the apartment or hurting her mother." Officer Ortiz reported further that Gabriela A. "was stomping her feet" as the officers were trying to put handcuffs on her, and that she was "noncompliant and . . . was not going to just surrender herself on

the warrant." Officer Ortiz testified that he was concerned when Gabriela A. grabbed the handcuff since it was "open . . . and serrated, [and] could be used as a weapon."

After the presentment agency rested, Gabriela A.'s attorney moved to dismiss the petition on the ground that the agency failed to make out a prima facie case. He argued there was "no indication in [the officers'] testimony that [Gabriela A.] was trying to injure either of them." Additionally, he claimed, there was insufficient proof of the officers' fear of imminent injury to justify a charge of menacing. Finally, Gabriela A.'s attorney asserted that the charges of resisting arrest and obstructing governmental administration were improperly "bootstrapp[ed]" to her PINS case. The presentment agency opposed the motion, arguing that "bootstrapping" was not prohibited for "true delinquency acts." Family Court denied the motion to dismiss.

Gabriela A. then testified on her own behalf. She told essentially the same story as Officers Flores and Ortiz, but insisted that she was not violent. Gabriela A. acknowledged that she refused to get out of bed and attempted to run away down the hallway. She also acknowledged moving her body around in an attempt to avoid being handcuffed. Although she admitted that she "tried to make it hard for [the officers]" to take her into custody, Gabriela A. denied trying to hit or kick anyone.

At the conclusion of the fact-finding hearing, Family Court found that Gabriela A. had committed acts which, if committed by an adult, would constitute the crimes of resisting arrest and obstructing governmental administration. The judge dismissed the counts alleging attempted assault and menacing, and remanded Gabriela A. to secure detention pending disposition.

At the dispositional hearing on April 11, 2012, Gabriela A.'s attorney again unsuccessfully argued that Family Court was prohibited from adjudicating his client a juvenile delinquent because she had only been found to have acted in a manner consistent with PINS behavior, not juvenile delinquency. On the PINS violations, Family Court placed Gabriela A., with her consent, in the custody of the Commissioner of Social Services for Westchester County for placement for one year at an agreed-upon nonsecure detention facility. On the March petition, the court granted Gabriela A. a one-year conditional discharge to expire on April 11, 2013. Under the terms of the conditional discharge, Gabriela A. was to be physically transferred from secure

to nonsecure detention no later than April 13, 2012.[1] Gabriela A. appealed.

On February 27, 2013, the Appellate Division reversed the dispositional order, vacated the underlying fact-finding order, dismissed the March petition and remanded the matter to Family Court for further proceedings pursuant to Family Court Act § 375.1 (103 AD3d 888 [2d Dept 2013]). Preliminarily, the court noted that "[a] PINS is one who is . . . incorrigible, ungovernable or habitually disobedient and beyond the lawful control of a parent or other person legally responsible for such child's care" (*id.* at 889 [internal quotation marks and citations omitted]). The court concluded that "[u]nder the particular circumstances of this case, [Gabriela A.'s] conduct was consistent with PINS behavior, not with juvenile delinquency," adding that "Family Court may not do indirectly what it is prohibited from doing directly—placing a PINS in a secure facility" (*id.* [internal quotation marks and citations omitted]). The presentment agency sought leave to appeal, which we granted on June 6, 2013 (21 NY3d 857 [2013]).[2] We now affirm.

A PINS is, among other things, "[a] person less than eighteen years of age who . . . is incorrigible, ungovernable or habitually disobedient and beyond the lawful control of a parent or other person legally responsible for such child's care, or other lawful authority" (Family Ct Act § 712 [a]).[3] By contrast, a "juvenile delinquent," as relevant here, is a person between 8 and 15 years old who "having committed an act that would constitute a

---

**1.** A " '[n]on-secure detention facility' " means "[a] facility characterized by the absence of physically restricting construction, hardware and procedures" (Family Ct Act § 712 [d]); by contrast, a " '[s]ecure detention facility' " means "[a] facility characterized by physically restricting construction, hardware and procedures" (*id.* § 712 [c]). As it turned out, then, Gabriela A. experienced the "tough love" of secure detention for only the roughly three-week duration of the juvenile delinquency proceeding on the March petition (*see* dissenting op at 166).

**2.** In March 2013, the Westchester County Department of Social Services informed Family Court that Gabriela A. had "responded positively to services" at the nonsecure facility where she was placed in April 2012, "made excellent progress academically" and "actively participated in improving communication with her family." As a result, the Department did not seek to extend Gabriela A.'s PINS placement. We note that the expiration of Family Court's dispositional order does not moot this appeal since the Appellate Division's order has the potential for future legal consequences (*see e.g.* Family Ct Act § 381.2 [2]).

**3.** Family Court Act § 712 (a) also permits finding someone a PINS who is habitually truant, commits certain minor marijuana possession offenses, or who appears to be a "sexually exploited child."

crime if committed by an adult . . . is not criminally responsible for such conduct by reason of infancy" (*see* Family Ct Act § 301.2 [1]). A PINS cannot be confined to a secure facility (*see* Family Ct Act § 720 [1], [2]); a juvenile delinquent, however, may be remanded to secure detention (*see id.* § 353.3 [1]).

Family Court Act § 718 sets out the procedure and the dispositional options available to the court when a PINS runs away. A peace officer (including, as here, probation officers) may "apprehend, restrain, and return such child" to the placement facility or foster home from which the PINS absconded. The probation officers whom Gabriela A. resisted or obstructed were acting pursuant to this section, attempting to return her to the nonsecure facility where she had been placed. Family Court implicitly equated Gabriela A.'s resistance to the restraint authorized by Family Court Act § 718 to the crimes of resisting arrest and obstructing governmental administration, and thus concluded that she was a juvenile delinquent under Family Court Act § 301.2.

The crime of resisting arrest requires that a person intentionally prevent "an authorized arrest" (Penal Law § 205.30). The restraint of a PINS pursuant to Family Court Act § 718, however, is not the same as a criminal arrest (*see Matter of Bernard G.*, 247 AD2d 91, 95 [1st Dept 1998]). A PINS proceeding is fundamentally civil in nature. In *Matter of Marrhonda G.* (81 NY2d 942, 945 [1993]), for example, we concluded that for Fourth Amendment purposes, a section 718 detention did not entitle a Port Authority police officer to conduct a full warrantless search of a young man's bag. We reasoned that the detained youth's bag could only have been searched "if [he] had been placed under arrest and the bag then searched as an incident thereto" (*id.*). Thus, a PINS who resists being restrained or transported back to a placement facility is not resisting arrest within the meaning of Penal Law § 205.30.

Next, a person is guilty of the misdemeanor of obstructing governmental administration when he or she "intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference" (Penal Law § 195.05). Probation officers qualify as "public servants" within the broad definition supplied in the Penal Law (*see* Penal Law § 10.00 [15]), and Gabriela A. admitted that she wanted to "make it hard" for Officer Flores and the other probation offi-

cers to handcuff and take her to the nonsecure facility. On the other hand, the legislature has defined a PINS to include someone who is "habitually disobedient and beyond the lawful control of . . . lawful authority" (Family Ct Act § 712 [a]). Thus, a PINS's disobedience and obstruction of "lawful authority" is not necessarily the same as an adult's. Since Family Court Act § 720 (1) and (2) forbid placement of a PINS in a secure facility, the legislature surely did not intend the type of behavior that might cause a child to be designated a PINS in the first place to become the basis for secure detention (see Matter of Naquan J., 284 AD2d 1, 5 [2d Dept 2001]).

In a related line of cases, the Appellate Division has considered whether the Family Court's contempt powers can be used to bring a PINS into compliance with the court's orders or conditions by so-called "bootstrapping." That is, the issue in these cases was whether the child's failure to comply with PINS requirements—what the courts referred to as engaging in typical PINS-type behavior—supplied a basis for imposing the sanction of criminal contempt, thus converting a PINS into a juvenile delinquent. The uniform conclusion has been that using the contempt power in this way is not allowed (see Matter of Daniel I., 57 AD3d 666, 667 [2d Dept 2008] [damaging electronic monitoring bracelet and breaking curfew]; Matter of Edwin G., 296 AD2d 7, 10-11 [1st Dept 2002] [PINS absconded from placement]; Matter of Jasmine A., 284 AD2d 452, 453 [2d Dept 2001] [elopement]). These cases construed the "Contempts" provision in Family Court Act § 156, which allows use of the contempt power in Family Court proceedings (both PINS and juvenile delinquency) when there is no "specific punishment or other remedy" provided elsewhere. In the case of a disobedient or absconding PINS, Family Court Act article 7 provides only for a return to placement or assignment to a new placement; it does not authorize contempt if the PINS fails to comply with the dispositional alternative imposed upon a PINS adjudication (see Family Ct Act § 756).

Physical resistance to probation officers, however, is different from ignoring a court order. Gabriela A.'s fractious behavior arguably posed a danger to herself, the probation officers and/or her family, even though Family Court found that she did not attempt to assault or menace the officers. But the Appellate Division, contrary to Family Court, found that Gabriela A.'s resistance fell within the bounds of acting "beyond the lawful control of . . . lawful authority" rather than Penal Law § 195.05. On

this record, where Family Court and the Appellate Division disagreed when evaluating Gabriela A.'s misbehavior, we simply conclude that the Appellate Division's factual findings more nearly comport with the weight of the evidence (see e.g. Matter of State of New York v Daniel F., 19 NY3d 1086, 1087 [2012]). In short, we are not, as the dissent puts it, "endors[ing a] trend" in the Appellate Division prohibiting "bootstrapping"⁴ or "propos[ing a] test" to immunize a PINS from juvenile delinquency proceedings for obstructing governmental administration (see dissenting op at 164-165).

Accordingly, the order of the Appellate Division should be affirmed, without costs.

PIGOTT, J. (dissenting). There has been a spate of recent Appellate Division opinions that have held that "Family Court may not 'bootstrap' a PINS adjudication onto one alleging juvenile delinquency by charging a PINS who absconds from a nonsecure facility with conduct that, if committed by an adult, would constitute escape" (Matter of Daniel I., 57 AD3d 666, 667-668 [2d Dept 2008]), or obstructing governmental administration (see id. at 668), criminal mischief (see id.) or criminal contempt (see Matter of Edwin G., 296 AD2d 7, 12 [1st Dept 2002]; Matter of Jasmine A., 284 AD2d 452, 453 [2d Dept 2001]; Matter of Naquan J., 284 AD2d 1, 6 [2d Dept 2001]). "Bootstrapping," as I see it, means using misconduct of the type that made someone a PINS in the first place (such as running away from home or a nonsecure facility) to subject a PINS to a juvenile delinquency petition charging acts that, if committed by an adult, would constitute crimes. The theory is that a PINS may not be adjudicated a juvenile delinquent on the basis of an action that "while defined statutorily as a crime, [is] a common characteristic of PINS behavior and more harmful to the juvenile than to society" (Daniel I., 57 AD3d at 668).

The majority endorses this trend, suggesting that, as a PINS, Gabriela A. may not be charged with resisting arrest or obstructing governmental administration for her physical resistance to being restrained or transported to a placement facility (see majority op at 162-163). Under the test seemingly proposed by the majority, the presentment agency must first, before subjecting a PINS to a juvenile delinquency petition, determine whether the

---

4. While Gabriela A.'s attorney employed this term, the Appellate Division did not. And however the dissent may define "bootstrapping" (see dissenting op at 164), the Appellate Division, as noted earlier, has generally reserved this term for discussions of Family Court's use of its contempt powers.

PINS was engaging in "the type of behavior that might cause a child to be designated a PINS" (majority op at 163). For example, before alleging that a PINS engaged in conduct that, if committed by an adult, would constitute obstructing governmental administration, the presentment agency must divine whether the behavior of the PINS is tantamount to intentionally obstructing governmental function or, rather, is merely "acting 'beyond the lawful control of . . . lawful authority' " (majority op at 163, quoting Family Ct Act § 712 [a]).

The proposed test is unworkable. It will force probation officers, presentment agencies and courts to analyze whether specific instances of misconduct fit within the very abstract and ill-defined concept of "PINS-type behavior" or behavior "more harmful to the juvenile than to society." Such an assessment will make for constant disagreements of judgment. Of course, the history of the present case illustrates this. On the one hand, the Appellate Division and a majority of this Court find Gabriela A.'s conduct to be the type of "more harmful to the juvenile than to society" behavior characteristic of a PINS. On the other hand, the presentment agency, Family Court, and two Judges of this Court tend to consider her behavior potentially dangerous to others. I would reject the Appellate Division's prohibition of "bootstrapping" and simply consider each case of misbehavior by a PINS on its own facts, when determining whether it rises to the level of juvenile delinquency.

Notably, the majority's proposed test may immunize from juvenile delinquency proceedings even a PINS who, because of his physical stature and strength, is far more intimidating and dangerous to parole officers than Gabriela A. The majority's willingness to consider a PINS as merely fractious and ungovernable, rather than truly harmful, would be called into question were the PINS a male, six feet tall and weighing 180 pounds. Fortunately, the majority seems to reject the suggestion that the physical resistance to probation officers described in the officers' testimony but denied by Gabriela A. (trying to stomp on officers' feet) would be mere "PINS-type behavior." But I suspect that if a large young man had engaged in even the less extreme resistance that Gabriela A. admitted to (flailing her body around and grabbing an open handcuff), my colleagues in the majority would conclude that he was properly adjudged a juvenile delinquent, even though his actions were identical to Gabriela A.'s.

Moreover, I disagree with the majority's theory that resisting restraint under Family Court Act § 718 is fundamentally different

from the crime of resisting arrest (majority op at 162). It may be misleading to describe detention pursuant to Family Court Act § 718 as a "full custodial arrest" (*see Matter of Bernard G.,* 247 AD2d 91, 94-95 [1st Dept 1998]; *contrast Matter of Jamel J.,* 246 AD2d 388, 389 [1st Dept 1998], *Matter of Michael J.,* 233 AD2d 198, 199 [1st Dept 1996], *Matter of Mark Anthony G.,* 169 AD2d 89, 93 [1st Dept 1991]), because the Fourth Amendment implications are somewhat different. However, this does not mean that the restraint of a PINS under Family Court Act § 718 is not "an authorized arrest" within the meaning of Penal Law § 205.30. Consequently, there is no bar as a matter of law to alleging resisting arrest in a juvenile delinquency petition, on the basis of physical resistance by a PINS.

In my view, the presentment agency did exactly as it should in filing the petition alleging violent conduct in the form of acts that, if committed by an adult, would constitute resisting arrest and obstructing of governmental administration. Family Court, in turn, did exactly as it should, in making the factual determination that Gabriela A. was guilty of such conduct. Overturning that determination, on the ground that Gabriela A.'s behavior is more consistent with acting beyond the control of lawful authority than with criminal conduct, downplays the very real risk of harm to the probation officers in the present case, and will be interpreted as immunizing a PINS who engages in conduct threatening to arresting officers from prosecution as a juvenile delinquent. Furthermore, the majority's decision does not benefit children who fall into the PINS category. Like the PINS statutes, the laws that permit juvenile delinquency proceedings are intended in significant part to protect these young men and women from their own worst impulses and help them straighten out. Sometimes "tough love"—including some period of confinement in a secure facility—is the best way to accomplish that. Indeed, it seems to have worked for Gabriela A., who, according to her counsel, is now an exemplary teenager. There is no good reason to restrict the efforts of caring and devoted presentment agency employees and Family Court judges, simply on the basis that their efforts are considered "bootstrapping."

I would reverse the Appellate Division's order, reinstate Family Court's fact-finding order and order of disposition, and reinstate the presentment agency's petition.

Chief Judge LIPPMAN and Judges GRAFFEO, RIVERA and ABDUS-SALAAM concur with Judge READ; Judge PIGOTT dissents in an opinion in which Judge SMITH concurs.

Order affirmed, without costs.