Matter of Zavion O. (Donna O.) (2019 NY Slip Op 03554)





Matter of Zavion O. (Donna O.)


2019 NY Slip Op 03554


Decided on May 7, 2019


Appellate Division, First Department


Tom, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 7, 2019
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Rosalyn H. Richter,J.P.
Sallie Manzanet-Daniels
Peter Tom
Marcy L. Kahn
Anil C. Singh, JJ.


&em;

[*1]In re Zavion O., Appellant, Administration for Children's Services, Petitioner-Respondent, Donna O., Respondent-Respondent, Ella M., Respondent. 
Lawyers for Children and the Children's Law Center, Amici Curiae.
In re Serenity R.L. (Anonymous), Appellant, Administration for Children's Services, Petitioner-Respondent, Johnny L., et al., Respondents. 
Lawyers for Children and the Children's Law Center, Amici Curiae.



Zavion O. appeals from the order of the Family Court,
New York County (Jessica Brenes, Referee), entered on or about June 29, 2018, which determined that his presence was required before the court and issued a warrant directing that he be produced. Serenity R.L. appeals from the order, same court (Clark V. Richardson, J.) entered on or about July 23, 2018, which ordered that a warrant of arrest be issued for her.




Dawne A. Mitchell, The Legal Aid Society, New York (Israel T. Appel of counsel), for appellants.
Zachary W. Carter, Corporation Counsel, New York (Daniel Matza-Brown and Fay Ng of counsel), for Administration for Children's Services, respondent.
Center for Family Representation, Inc., New York (Maura A. Keating of counsel), for Donna O., respondent.
Karen Friedman, Lawyer's for Children, Inc., New York (Betsy Kramer of counsel), and Karen Simmons, The Children's Law Center, Brooklyn (Louise Feld of counsel), for amici curiae.



TOM, J.


These cases, consolidated for appeal, present the recurring issue whether Family Court Act § 153, relied on by Family Court, authorizes the issuance of a warrant for the protective arrest of a child who is neither a respondent nor a witness in a Family Court proceeding for purposes of ensuring the child's health and safety rather than to compel his or her attendance in court. Notwithstanding that such protective arrests may have become a practice of Family Court under very compelling circumstances, in the absence of more explicit statutory authority we cannot endorse the legality of the practice. In reaching our conclusion, though, we do not suggest any criticism of the respective Family Courts in this case nor do we impute improper motives to the Administration for Children's Services, various parties or even law enforcement, who, to all appearances, were operating on the best of motives. However, the issuance of an arrest warrant must proceed from explicit statutory authority. Such is lacking in this case, as is, notably, any authoritative decisional law.
The record clearly shows that the two children in these cases are at high risk of bringing harm to themselves or putting themselves in positions where others may harm them if they are left to their own choice of absconding from foster care facilities to enter life on the streets. The behavioral issues are explained and supported by medical documentation. Both have significant vulnerabilities masked by aggressive and confrontational behavior. Both have displayed histories of absconding from home and placement settings, presenting the substantial risk that they would end up on the streets. This was the outcome that all parties wanted to prevent. Both children are marked by multiple mental illness diagnoses and neurological impairments requiring medication which they often will not take and apparently did not take when they absconded, leading to the inevitable downward spiral during which each engaged in risky behavior. Both have complicated family situations in which family members are unavailable as resources, or available family members who may be willing to be resources have had persistent difficulties controlling the children, and both children manifest severe behavioral problems. The record also clearly demonstrates the likelihood that they will run away again if not in a controlled setting of some nature, thereby repeating the cycle of being at risk on the streets.
In Serenity's case, her father executed a voluntary placement agreement, recognizing that he could not control her behavior, which then became the basis for the Petition for Approval of an Instrument filed by ACS. By Family Court order dated March 6, 2018, Serenity was temporarily placed in foster care with Mercy First. Serenity left her foster care placement on or about May 11, 2018, after which ACS filed a Notice of Absconded Child on or about May 16, 2018, and the National Center for Missing and Exploited Children was notified. On May 16, 2018, Family Court in New York County issued a warrant of arrest for Serenity pursuant to [*2]Family Court Act § 153. The warrant imposed as a restriction that no handcuffs were to be used unless required by safety or security concerns. The warrant also directed that if it was executed outside of the hours during which Family Court was open, the child was to be brought to the ACS Children's Center at 492 First Avenue in Manhattan. By order of disposition dated June 8, 2018, Family Court approved the voluntary placement agreement executed by Serenity's father and transferred her care and custody to Mercy First for long-term placement.
Serenity subsequently left the facility again on or about June 25, 2018. Serenity was observed by an ACS search team on July 13, 2018, at which time she aggressively resisted returning to the facility. On July 16, 2018, ACS filed a second Notice of Absconded Child, which described some of the risky behavior in which she was engaging, including that Serenity may be "engaging in unsafe sexual behavior" and was not taking her prescribed psychotropic medications. Family Court issued another arrest warrant, which was executed on July 18, 2018. Upon inquiry by the court, ACS indicated that it would return Serenity to Mercy First, but the attorney for the child predicted that she would "be out on the street again." On July 19, 2018, Serenity left the facility again, and ACS filed another Notice of Absconded Child on July 20, 2018. This notice advised that Serenity, an asthma sufferer, was without her inhaler and that she had not brought with her the psychotropic medication prescribed for her. ACS applied for another arrest warrant.
At the July 23, 2018 appearance in connection with the ACS warrant application, the attorney for the child objected to the warrant application. Family Court transferred the matter to Referee Jessica Brenes and adjourned it to the following day. The following day, the case worker assigned to Serenity repeated the concern that Serenity had absconded without her medication, which placed her at a substantial health risk, described the protocols that would be employed upon her return, including crisis counseling, but conceded that they had also been in place prior to prior runaway episodes. The warrant application was granted. This Court stayed execution of the arrest warrant by order entered August 1, 2018. Serenity was returned to foster care on July 24, 2018. By order entered August 7, 2018, Family Court declined to vacate the warrant. Apparently, Serenity left Mercy First again prior to the hearing of the appeal.
In Zavion's case, his grandmother, who was his legal guardian, executed a voluntary placement agreement on or about January 25, 2017. In the ACS petition to approve the agreement, ACS described the neurological and behavioral issues that impeded his grandmother's ability to control his behavior. After a hearing, Family Court granted the petition and transferred his care and custody to ACS. Zavion's situation differed to a degree from that of Serenity in that he was in a placement proceeding and, indeed, his progress was reported during several placement hearings. There was an indication that he would be placed in a new school, he wanted to return home, and a trial discharge was anticipated. However, problems arose concerning cancellations of home visits - whether his grandmother or case worker cancelled the visits was disputed. Zavion resisted returning to ACS, and Zavion's progress started to deteriorate. He started to abscond, was reported by his grandmother to be "run[ning] the streets" at night, may have had a history of suicidal ideations, and may have been engaging in drug use.
ACS applied for an arrest warrant, to which the attorney for the child objected on jurisdictional and other grounds. The Family Court Referee, in issuing the warrant, concluded that it "cannot allow the absence of any specific authority to paralyze it from acting in the best interests of the child." Although noting the need for legislative action insofar as "the statute is in fact silent . . . specifically where these types of cases are concerned," the Family Court's decision found that the arrest warrant as a means of protecting the child was consistent with Family Court's exercise of its jurisdiction to protect the child from the adverse health and safety consequences of absconding from foster care. Technically, the court in its subsequent written decision grounded its warrant jurisdiction in the need to ensure the child's presence in court - [*3]thereby at least touching on some of the phrasing in § 153 - so as to allow the court to assess the child's safety or the child's wishes regarding placement. By order entered July 2, 2018, this Court stayed the execution of this warrant as well, pending determination of the appeal. Apparently, Zavion has continued to abscond on multiple occasions.
Family Court Act section 153 authorizes Family Court to issue "in a proper case a warrant or other process to secure or compel the attendance of an adult respondent or child . . . whose testimony or presence at a hearing or proceeding is deemed by the court to be necessary. . . ." Section 153-a governs the execution of the arrest warrant, which, pursuant to subsection (c) may include "such physical force as is justifiable" by reference to the Penal Law. Although the decision accompanying an arrest in this case contemplated the absence of handcuffs, the statute nevertheless allows for it and a restriction in one case has no effect, of course, in other similar cases. An arrest warrant allows for heightened coercion imposed on the arrestee with Fourth Amendment ramifications. An arrest record, even if not correlating with a criminal record, could have future adverse ramifications for employment or otherwise. Moreover, there is also the potential trauma that an arrest, especially if coupled with handcuffs or other restraints, may pose for an already fragile child. Hence, even if an arrest warrant were to be legislatively authorized for cases such as these, it should be carefully conditioned so as to be sensitive to these concerns. In any event, while the record for these particular cases amply demonstrates the need for a valid and binding legal instrument to secure the subject children, keep them off the streets, in a manner of speaking, for their own health and safety, and to provide a means for the children to be continually provided regular medical treatment and other services, no statutory device seems to fit the need in either of these cases.
Family Court relied on section 153 as a device to issue arrest warrants to facilitate these goals. As noted above, we do not fault the court, law enforcement, the parties or the attorneys for each child in terms of their motivation, all of whom perceived themselves to be acting in the best interests of each child. However, the question presented to us is whether under these compelling circumstances the court could avail itself of section 153 to achieve the intended protective goal. We conclude that the statute does not authorize the arrest of a nonrespondent child who is not needed as a witness in a Family Court hearing or proceeding under these circumstances regardless of the seriousness of the concerns.
These are not juvenile delinquency cases, and notwithstanding the court's gloss about securing Zavion's attendance to inquire into safety issues and his desires regarding placement, neither child's attendance at a proceeding was required for testimonial purposes. Hence, a textual analysis of the statute does not support a conclusion that an arrest warrant may be issued as a protective rather than a coercive device for testimonial or quasi-prosecutorial purposes. The Practice Commentary notes the ambiguity of the phrasing and observes that "[c]ommon sense and elementary due process principles" militate against allowing a "non-respondent child [to] be dragged into court upon issuance of an arrest warrant" for protective purposes (Prof. Merril Sobie, Practice Commentary, McKinneys Cons Laws of NY, Book 29A, Family Ct Act § 153, 2014 Supp.).
Other statutory tools, available for other purposes, are worth examining. Family Ct Act § 718 allows a peace officer under defined circumstances or a police officer to return a runaway child to home or, if appropriate, a facility certified to accept runaway children. However, this provision is located in Family Ct Act article 7 pertaining to persons in need of supervision. Although, in effect, § 718 authorizes the peace officer or police officer to take the runaway child into temporary custody and provides a basis for probable cause to that extent, it, too, does not authorize an arrest (Matter of Bernard G., 247 AD2d 91 [1st Dept 1998]; cf. Anonymous v City of Rochester, 56 AD3d 139 [4th Dept 2008], affd on other grounds 13 NY3d 35 [2009]).
Rather, the temporary custodial detention contemplated by § 718 is civil in nature, in [*4]contrast to the heightened coercive custody manifest in a criminal arrest. As the Court of Appeals has cautioned, a PINS proceeding and the accompanying custody of the runaway child does not ripen into criminal delinquency even if the child resists (Matter of Gabriela A., 23 NY3d 155 [2014]). Nor can this limited detention authority be bootstrapped to more coercive judicial powers for a chronic absconder (id.; Matter of Edwin G., 296 AD2d 7 [1st Dept 2002]) notwithstanding "the frustration Family Court judges frequently feel while attempting to compel recalcitrant PINS to comply" with their orders (Matter of Jennifer G., 26 AD3d 437, 438 [2d Dept 2006]), absent an independent basis to arrest the respondent child as a juvenile delinquent. Hence, this provision addressed to PINS runaways also cannot be the basis for an arrest warrant by a statutory sleight of hand.
Noting the statutory deficiency in providing tools for detaining serial absconders who need treatment and other services in a nonsecure facility, we have upheld Family Court determinations adjudicating some child respondents as juvenile delinquents rather than persons in need of supervision (Matter of A.H., 149 AD3d 573 [1st Dept 2017]; Matter of Kaylynn M., 143 AD3d 413 [1st Dept 2016]; Matter of Amari D., 117 AD3d 522 [1st Dept 2014]), but they were responsible for acts that would constitute crimes if committed by adults.
We have also rejected a juvenile delinquency adjudication premised solely on contempt pursuant to Family Ct Act § 156 arising from a child's violation of a PINS dispositional order when he absconded from his ACS placement, also in the absence of statutory authority. In that case, we noted the irony that while Family Court may direct a child not to abscond, it lacked effective enforcement power when the child nevertheless does abscond (Matter of Edwin G., 296 AD2d at 10). While that is not the context of the cases before us at present, since these are not PINS dispositions and Family Court did not adjudicate either child a juvenile delinquent, nevertheless, it has become apparent that Family Court lacks effective statutory tools to address the broader problem of serial absconders.
For similar reasons, nor are 22 NYCRR 205.26 or 205.80, addressing children who abscond from facilities to which they have been remanded, available for present purposes. Family Ct Act § 1037, authorizing a warrant to bring a child's parent or guardian rather than the child before the court, also provides no authority relevant to the present cases.
The Referee in Zavion's case relied in part on its general parens patriae responsibility to "to do what is in the best interests of the children" (Matter of Shinice H., 194 AD2d 444, 444 [1st Dept 1993]). However, this doctrine cannot create jurisdiction for Family Court that is not provided by statute (Matter of Bonnie Michelle W., 76 AD2d 784 [1st Dept 1980], affd 54 NY2d 820 [1981]). As this Court noted, "While we are sympathetic to the court's concern for the welfare of the appellant, the Family Court is a court of limited jurisdiction. It has only such jurisdiction and powers as the Constitution and the laws of the State expressly grant it" (76 AD2d at 785). Hence, well-intended goals cannot create jurisdiction not explicitly conferred on Family Court.
Returning the analysis to § 153, the absence of interpretive caselaw supporting the issuance of a warrant for what in effect is a protective arrest is telling. The legislative history of this century-old statutory provision also is unenlightening. Kings County Family Court analyzed the absence of authority to order the arrest on a nonrespondent child in the absence of a proceeding in Matter of Jennifer R. (Tanya M.) (42 Misc 3d 508 [Family Ct, Kings County 2013]). That court, also struggling with the statutory deficiencies, rejected as disingenuous the ACS theory equating the notice of the absconded child with a "proceeding" as a manufactured device to justify the issuance of a warrant. While the cases before us present a different problem, we, too, decline to interpret § 153 in a contrived manner in order to justify the issuance of a warrant.
It seems clear that ACS, with effective judicial backing, needs tools in cases such as this [*5]to maintain children, who have not been adjudicated juvenile delinquents but who chronically abscond, in controlled settings where they can be administered medically prescribed medication and receive appropriate therapeutic and other services without which there is the significant and demonstrated likelihood that they will be a danger to themselves or others but who, by regularly absconding, are likely to end up on the streets vulnerable and unprotected. Multiple courts over the years have identified the deficiencies in the Family Court Act regarding this and similar problems. Family Court is constitutionally and statutorily constrained from undertaking what may seem to be a middle ground of issuing an arrest warrant under § 153 for protective purposes in what is essentially a civil context. As was noted by our sister court in Matter of Jennifer G., regarding a somewhat different problem, "[T]he resolution of this dilemma rests with the [l]egislature" (26 AD3d at 438). The appropriate vehicle for providing Family Court with the means to achieve the goals commensurate with the problem would seem to be either an amendment to section 153 or other statutory provisions, but it is in the legislative realm, and we would encourage that undertaking.
Accordingly, the order of the Family Court, New York County (Jessica Brenes, Referee), entered on or about June 29, 2018, which determined that the child Zavion O.'s presence was required before the court and issued a warrant directing that he be produced, and the order, same court (Clark V. Richardson, J.) entered on or about July 23, 2018, which ordered that a warrant of arrest be issued for the child Serenity R.L., should be reversed, on the law, without costs, and the warrants of arrest vacated.
All concur.
Order, Family Court, New York County (Jessica Brenes, Referee), entered on or about June 29, 2018, and order, same court (Clark V. Richardson, J.) entered on or about July 23, 2018, reversed, on the law, without costs, and the warrants of arrest vacated.
Opinion by Tom, J. All concur.
Richter, J.P., Manzanet-Daniels, Tom, Kahn, Singh, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: MAY 7, 2019
CLERK